## STANLEY BARTON HOSS, JR. *v.* STATE OF MARYLAND

[No. 163, September Term, 1971.]

*Decided November 15, 1971.*

The cause was argued before MURPHY, C. J., and ORTH and MOYLAN, JJ.

*John M. Robb* and *Louis A. Fatkin* for appellant.

*Clarence W. Sharp, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General,* and *Donald W. Mason, State's Attorney for Allegany County,* on the brief, for appellee.

MURPHY, C. J., delivered the opinion of the Court.

Appellant Hoss has appealed from an order of the Circuit Court for Allegany County denying his motion to dismiss two indictments against him. The pertinent facts are these: On October 9, 1969 appellant was indicted by the Grand Jury of Allegany County, Maryland

for the kidnapping of Linda Mae Peugot, her two year old daughter Lori, and for the larceny of an automobile. He was promptly served with warrants, and detainers on these charges were lodged against him in a Pennsylvania prison where he was incarcerated under a ten to twenty year sentence for rape and awaiting trial on charges of murdering a Pennsylvania policeman. On March 8, 1970 appellant was found guilty of murder and sentenced to death; he appealed the judgment to the Pennsylvania Supreme Court. Thereafter, on July 17, 1970 appellant petitioned the appropriate Maryland authorities for disposition of the Maryland indictments pursuant to the provisions of the Interstate Agreement on Detainers (the Act), Maryland Code, Article 27, Sections 616A-616R. By the provisions of Section 616B of that Act, it is specified:

> "The party states find that charges outstanding against a prisoner, detainers based on untried indictments, informations or complaints, and difficulties in securing speedy trial of persons already incarcerated in other jurisdictions, produce uncertainties which obstruct programs of prisoner treatment and rehabilitation. Accordingly, it is the policy of the party states and the purpose of this agreement to encourage the expeditious and orderly disposition of such charges and determination of the proper status of any and all detainers based on untried indictments, informations, or complaints.* * *"

By Section 616D of the Act it is provided:

> "Whenever a person has entered upon a term of imprisonment in a penal or correctional institution of a party state, and whenever during the continuance of the term of imprisonment there is pending in any other party state any untried indictment, information or complaint on the basis of which a detainer has been lodged against the prisoner, he shall be brought to trial

within one hundred and eighty days after he shall have caused to be delivered to the prosecuting officer and the appropriate court of the prosecuting officer's jurisdiction written notice of the place of his imprisonment and his request for a final disposition to be made of the indictment, information or complaint; provided that for good cause shown in open court, the prisoner or his counsel being present, the court having jurisdiction of the matter may grant any necessary or reasonable continuance. * * *"

In pursuance of appellant's request to be tried on the Maryland indictments, the Circuit Court for Allegany County appointed counsel to represent him on August 18, 1970. On August 31 appellant in proper person filed a motion "to keep the record free of any continuance"; in the motion, he demanded an immediate trial, stating that he did not want the provisions of the Interstate Agreement on Detainers tolled for any reason. On September 15, 1970, appellant in proper person demanded his federal constitutional right to a speedy trial under the Sixth Amendment; in his motion claiming the right, he asserted that unless he was afforded a speedy trial, witnesses available to establish an alibi for him would be lost.

In November or early December of 1970, the State set the case for trial on January 11, 1971. On December 4, 1970, appellant's counsel petitioned the court for an order that appellant be returned to Allegany County "a reasonable number of days" before the January 11, 1971 trial date. The court granted the order. By motions also dated December 4, 1970, appellant's counsel sought issuance of writs of *habeas corpus ad testificandum* to have two fellow prisoners of appellant in the Pennsylvania prison appear for him as witnesses. It was requested that they be brought to Allegany County prior to trial to permit counsel to properly prepare appellant's defense. The court took no action on these motions. On

December 22, 1970, almost a month prior to the expiration of the 180 day period prescribed by Section 616D, the State petitioned for a continuance of the trial, claiming that as appellant was being held under sentence of death in Pennsylvania, neither the purpose underlying the Act nor its provisions were applicable to him. It was the State's position that the death sentence imposed upon appellant did not constitute the prerequisite "term of imprisonment" necessary under Section 616D to invoke the Act's provisions; and, further, that since it was the purpose of the Act, as specified in Section 616B to foster prisoner rehabilitation, it was inapplicable to persons under sentence of death. The State advanced the further reason for the continuance that should appellant's conviction and sentence be affirmed by the Pennsylvania Supreme Court, and the death sentence carried out, the Maryland cases would become moot. Appellant opposed the State's petition for a continuance and a hearing was set for January 5, 1971. At the hearing appellant's counsel did not take serious issue with the State's position respecting the non-applicability of the Act to a person incarcerated under a death sentence; rather, counsel argued strenuously that notwithstanding appellant's death sentence he was nevertheless entitled to exercise his constitutional right to a speedy trial. Counsel urged that since appellant's death sentence could be set aside on appeal, the mere fact of its imposition was an insufficient basis to grant a postponement and would defeat his constitutional right to a speedy trial.

The court held the State's petition for continuance *sub curia* and the trial set for January 11, 1971 was not held. The 180 day statutory period provided for in Section 616D of the Act expired on January 18, 1971. Three days thereafter, appellant filed a motion to dismiss the indictments under Section 616F(c) of the Act which provides that an indictment be dismissed with prejudice if not brought to trial within the 180 day period. Appellant's motion for dismissal was based on the twofold ground, first, that the dismissal was proper under Sec-

tion 616F(c) of the Act and, second, because his constitutional right to a speedy trial had been violated.

It was not until March 24, 1971 that the court filed an "Opinion and Order" in the case. The court stated therein, by way of introductory background, that the appellant had requested an immediate trial under the Act and also claimed his constitutional right to a speedy trial. The court held, on authority of *Dickey v. Florida,* 398 U. S. 30, and *Klopfer v. North Carolina,* 386 U. S. 213, that appellant was "entitled to a speedy trial under the 6th Amendment to the United States Constitution notwithstanding the fact that he is incarcerated under a sentence in a foreign jurisdiction." Following this pronouncement, the court said:

> "* * * This determination makes it unnecessary to consider his contention under the Interstate Detainer Act, although the Court is of the opinion that the State's position is well taken and that the purpose of the Interstate Detainer Act is to dispose of pending charges in order that a Defendant's rehabilitation may be effected. This objective could hardly be applicable to a death sentence which the Defendant is under in Pennsylvania since rehabilitation is moot under such circumstances. * * * The constitutional right to a speedy trial does not mean an immediate trial and the delay, if any, in the present case has not resulted in (1) oppressive incarceration; (2) caused the Defendant undue anxiety; and (3) impaired the ability of the accused to defend himself as suggested by *U. S. v. Ewell* 383 U. S. 116."

The court directed that appellant be tried within "a reasonable period of time." While the original copy of the court's opinion carries a pencil notation that the State's Attorney requested that trial be set in May of 1971, nothing in the record otherwise establishes that a trial date was thereafter fixed. In any event, on April

21, 1971 appellant entered an appeal from the court's order denying his motion to dismiss the indictments. The record on appeal was transmitted to us on May 21, 1971. No motion was made to advance the case for argument under Maryland Rule 1045, and we heard oral argument on the appeal on October 4, 1971. On October 12, 1971, the Pennsylvania Supreme Court affirmed appellant's murder conviction but vacated the death sentence on the ground that at the penalty phase of the trial the jury had improperly heard testimony concerning appellant's alleged kidnapping in Maryland of Linda and Lori Peugot. *Commonwealth v. Hoss,* 283 A. 2d 58.[1]

I

The provisions of the Interstate Agreement on Detainers apply *only* in cases where a detainer has been lodged against a prisoner who has entered upon a term of imprisonment; the Act contains no directive that all those accused of a crime and incarcerated in prison in a party state must be tried within the period of 180 days if they so demand.[2] *King v. State,* 5 Md. App. 652; *State v. Long,* 1 Md. App. 326, 333. Maryland lodged its detainer against appellant with Pennsylvania prison authorities at a time when he was serving a ten to twenty year sentence for rape; he had not then been convicted of the Pennsylvania murder. Thus, at the time the detainer was filed, the appellant was serving a "term of imprisonment" within the meaning of Section 616D of the Act and its provisions were clearly applicable to him. Though subsequently convicted of murder and sentenced to death, appellant continued serving the sentence imposed upon him for rape, at least

---

1. The Pennsylvania court remanded the case for further proceedings on the sentencing phase of the trial.

2. Pennsylvania is a party state to the Interstate Agreement on Detainers. A "detainer," in the sense used in the Act, is some form of communication to prison authorities in the state in which the prisoner is incarcerated under a term of imprisonment notifying them of the pendency of criminal charges and requesting that the prisoner not be released upon expiration of his sentence but held for delivery to the authorities who lodged the detainer against him.

during pendency of his appeal and until the judgment imposing the death sentence became final. Clearly, however, the later imposition of the death sentence added a new dimension to the circumstances surrounding appellant's demand for trial under the provisions of the Act. The purpose of the Act, as previously outlined, was to promote and foster prisoner treatment and rehabilitation programs by eliminating the uncertainties which accompany the filing of detainers. If appellant's only sentence was one of death, and that sentence was final, and nothing remained but to execute it, the Act's purpose and provisions would manifestly have been inapplicable to him. But while such was not the posture of appellant's case at the time he invoked the Act's provisions, and ultimately the Pennsylvania Supreme Court vacated his death sentence, we think at the time the State's motion for continuance was filed, "good cause" for a continuance under Section 616D was shown—not on the basis that the Act did not apply, but rather because, in the circumstances, affirmance of the death sentence and its imposition would likely have mooted the Maryland cases. The trial date had been fixed within the 180 day statutory period and the State's motion for continuance was filed well in advance of the trial and of the date upon which the 180 day statutory period would have expired. Why the court failed to rule on the State's motion for continuance prior to the expiration of the 180 day period is unclear, but we think the court's failure to do so, coupled with the actual postponement of the trial previously set for January 11, 1971, was tantamount to the court having timely granted the State's motion for the continuance for the reason, later expressed in its opinion, that the State's position was "well taken." *Cf. State v. Lippolis,* 257 A. 2d 705 (N.J.). As was noted in *Bloeth v. Marks,* 247 N.Y.S.2d 410, 414, involving a demand for trial under a statute similar to the Interstate Agreement on Detainers, and a prosecution request for a postponement for "good cause," as permitted by the statute, "[i]t would clearly serve no purpose to try the

petitioner on the open indictments while he was under a sentence of death." We think, in the circumstances of this case, the State's motion for continuance was based on good cause and that despite the subsequent vacating of appellant's death sentence, his rights under the statute were not violated. In so concluding, we are mindful of the fact that Section 616B of the Act cites as a reason for its passage that "difficulties" are encountered "in securing speedy trial of prisoners already incarcerated in other jurisdictions"; and that one purpose of the Act is "to encourage the expeditious and orderly disposition" of outstanding charges against prisoners. While the Act's provisions may have been intended to secure the prisoner's right to a speedy trial (see *People v. Esposito*, 201 N.Y.S.2d 83) the 180 day provision for trial is not the legislative measure of a prisoner's constitutional right to a speedy trial, State or federal. The Act provides machinery by which the prisoner is enabled to secure his constitutional right to a speedy trial, but it does not mandate that his constitutional right to such a trial is denied him unless he is tried within the strictures of the various provisions of the Act. See *King v. State, supra; State v. Long, supra*. Whether the prisoner was denied his federal or State constitutional right to a speedy trial is a question of constitutional, and not statutory, import. That question was properly raised and we now proceed to its resolution.[3]

## II

The Sixth Amendment right of an accused to a speedy trial is binding upon the States through the Fourteenth Amendment. *Klopfer v. North Carolina, supra*. The right is not lost simply because the accused is incarcerated in

---

3. Although the question was not raised by the State, we entertain grave doubt that appellant had a right to appeal from that part of the lower court's order declining to dismiss the indictments for failure of the State to comply with the 180 day provision of the statute. See *Raimondi v. State*, 8 Md. App. 468, holding that appeals from interlocutory orders of the trial court in criminal cases are not allowed.

a penal institution in another state. *Dickey v. Florida, supra; Smith v. Hooey,* 393 U. S. 374. Neither is it forfeited where, as here, the accused who demands it is incarcerated under sentence of death, an appeal from which remains pending.

We have carefully developed the test to be applied in determining whether an accused has been denied his constitutional right to a speedy trial in numerous cases from *Allen v. State,* 1 Md. App. 249, to *State v. Lawless,* 13 Md. App. 220. Judge Moylan, speaking for the court in *Lawless,* made an exhaustive review of the cases, including those recently decided by the Supreme Court. No purpose would be served by repeating the governing principles; they are too well settled to require further definition. On the facts of this case, we do not think appellant's constitutional right to a speedy trial was denied. We think the delay in bringing appellant to trial runs from September 15, 1970, when he demanded the right, to April 21, 1971, when he appealed the denial of his motion to dismiss the indictments. The trial delay between September 15, 1970 and January 5, 1971, the date on which the hearing was held on the State's motion for a continuance under Section 616D, was less than substantial in the constitutional sense (see *Wilson v. State,* 8 Md. App. 299) ; and appellant offered no evidence at the hearing in support of his claim that his defense was prejudiced by the delay, nor did he make any showing of a strong possibility of prejudice. The reason for the additional delay caused by the failure of the lower court to act until March 24, 1971 on appellant's motion to dismiss the indictments for lack of a speedy trial, filed on January 21, 1971, is not given. While the court's extended inaction on appellant's motion tended to lend additional substance to appellant's claim that he was being denied his constitutional right to a speedy trial, and brought the period of delay chargeable to the State dangerously close to the line dividing "substantial" delays from those deemed "less than substantial," we nevertheless conclude in the circumstances that up until April

414

21, 1971, when appellant noted the present appeal, his right to a speedy trial was not denied him by the State.

*Order affirmed.*