# HOSS v. STATE OF MARYLAND

[No. 382, September Term, 1971.]

*Decided June 14, 1972.*

*Motion for rehearing filed July 14, 1972; denied September 11, 1972.*

The cause was argued before BARNES, McWILLIAMS, SINGLEY, SMITH and DIGGES, JJ., and DULANY FOSTER, Chief Judge of the Supreme Bench of Baltimore City, specially assigned.

*John M. Robb* and *Louis A. Fatkin* for appellant.

*Clarence W. Sharp, Assistant Attorney General,* for appellee.

McWILLIAMS, J., delivered the opinion of the Court.

We shall consider here the applicability to the case at bar of the Interstate Agreement on Detainers, Code (1971 Repl. Vol.), Art. 27, §§ 616A-616R. The Court of Special Appeals affirmed an order of the Circuit Court for Allegany County, Getty, J., denying appellant's motion to dismiss the indictments against him. On 15 February 1972 we ordered the issuance of the writ of certiorari. We shall state only those facts which seem necessary for our discussion of the novel question they present. A more complete statement will be found in *Hoss v. State,* 13 Md. App. 404 (1971).

On 9 September 1969 the appellant (Hoss) escaped from a jail in the vicinity of Pittsburgh. Having been convicted of rape he had been awaiting the imposition of sentence. Ten days thereafter he killed a Pennsylvania police officer for which later on he was indicted. On 22 September a Maryland woman and her two year old daughter disappeared. Hoss was indicted by the Allegany County Grand Jury in October 1969 for the kidnapping and abduction of the woman and her child and the larceny of her motor vehicle. On 4 October, following his capture in Iowa, he was brought back to Pennsyl-

vania. For the rape he was sentenced to a term of 10 to 20 years. In March 1970 he was convicted of the murder of the police officer and in September he was sentenced to death. His conviction was affirmed by the Supreme Court of Pennsylvania in October 1971 but the sentence of death was vacated for reasons not now relevant and the case was remanded for further sentencing proceedings. *Commonwealth v. Hoss,* 445 Pa. 98, 283 A. 2d 58 (1971).[1]

In July 1970, after his conviction but before the death sentence was imposed, detainers were lodged by Maryland authorities with the Pennsylvania Bureau of Correction. Immediately thereafter Hoss requested final disposition of the Allegany County indictments in accordance with the provisions of Art. 27, §§ 616A-616R. He waived extradition and consented to his eventual return to the Pennsylvania jail all as required by the statute.

Section 616D of Art. 27 provides in part:

> "Whenever a person has entered upon a term of imprisonment in a penal or correctional institution of a party state, and whenever during the continuance of the term of imprisonment there is pending in any other party state any untried indictment, information or complaint on the basis of which a detainer has been lodged against the prisoner, *he shall be brought to trial within one hundred and eighty days* after he shall have caused to be delivered to the prosecuting officer and the appropriate court of the prosecuting officer's jurisdiction written notice of the place of his imprisonment and his request for a final disposition to be made of the indictment, information or complaint: provided that *for good cause shown in open court,* the prisoner or his counsel being present, the court having jurisdiction of the matter *may grant any neces-*

---

1. As of the date of the filing of this opinion there had been no further proceedings in the trial court.

*sary or reasonable continuance."* (Emphasis added.)

The text of § 616F (c) follows:

"(c) *Dismissal of indictment, etc.*—If the appropriate authority shall refuse or fail to accept temporary custody of said person, or in the event that *an action on the indictment,* information or complaint on the basis of which the detainer has been lodged *is not brought to trial within the period provided* in Article III or Article IV hereof, the appropriate *court* of the jurisdiction where the indictment, information or complaint has been pending *shall enter an order dismissing the same with prejudice,* and any detainer based thereon shall cease to be of any force or effect." (Emphasis added.)

Counsel was appointed to represent Hoss on 18 August 1970. On 31 August, fearing they might agree to a continuance of his trial, he filed, in proper person, a motion in which he stated, "* * * I in NO WAY seek, desire or accept a continuance in these indictments * * *." Again on 15 September he filed, in proper person, a motion demanding a speedy trial. He insisted that unless trial was initiated promptly he would lose the benefit of the testimony of witnesses claimed to be vital to his defense. His case was set for trial on 11 January 1971, within the 180 day provision of the statute. Early in December counsel for Hoss sought and obtained an order directing the State to bring him to Allegany County "a reasonable number of days before 11 January 1971, so that his counsel * * * [might] confer with him prior to trial." Petitions for the production of two witnesses incarcerated in Pennsylvania also were presented but no action was taken thereon by the court. On 22 December 1970 the State filed a petition for a continuance giving as reasons therefor the probable affirmance, and subsequent execution, of the death sentence which, it was con-

tended, would make the Maryland trial moot, and, the purpose of the statute being rehabilitative in nature, it should not be applied in the case of one on whom the death sentence has been imposed. After argument, in which Hoss's counsel sturdily resisted the granting of the continuance, Judge Getty held the matter *sub curia*. He was still holding it *sub curia* when the 180 day period expired. On 21 January 1971, after the expiration of the 180 days, Hoss moved to dismiss the Maryland indictments, alleging that he had been denied a speedy trial and that the State had not brought him to trial within the statutory 180 day period.

What follows is the pertinent portion of Judge Getty's opinion and his order of 24 March:

"The court is of the opinion that the accused is entitled to a speedy trial under the 6th Amendment to the United States Constitution not withstanding the fact that he is incarcerated under a sentence in a foreign jurisdiction. *Dickey v. Florida* No. 728 October Term 1969 United States Supreme Court and *Klopfer v. North Carolina,* 386 U. S. 213. This determination makes it unnecessary to consider his contention under the Interstate Detainer Act, although the court is of the opinion that the State's position is well taken and that the purpose of the Interstate Detainer Act is to dispose of pending charges in order that a Defendant's rehabilitation may be effected. This objective could hardly be applicable to a death sentence which the Defendant is under in Pennsylvania since rehabilitation is moot under such circumstances. The Defendant's Motion to Dismiss the Indictment is denied. The constitutional right to a speedy trial does not mean an immediate trial and the delay, if any, in the present case has not resulted in (1) oppressive incarceration; (2) caused the Defendant undue anxiety; and (3) impaired the ability of the accused to de-

fend himself as suggested by *U.S. v. Ewell,* 383 U.S. 116.

## "ORDER OF COURT

"It is hereby ORDERED by the Circuit Court for Allegany County, Maryland, this 24th day of March, 1971, that Stanley Barton Hoss, Jr., be, and he is hereby determined to be entitled to a speedy trial in Nos. 1089 and 1090 Criminal Trials whereby he stands charged with the crime of kidnapping and abduction.

"It is further ORDERED that the State of Maryland shall undertake to arrange for an orderly trial of these matters on the merits within a reasonable period of time.

"And it is further ORDERED that the Motion of the Defendant to dismiss the indictment against him, be, and the same is hereby denied."

It is obvious, we think, that Judge Getty either declined or neglected to grant the State's petition for a continuance. He seems to have concluded that the statute was inapplicable because Hoss was entitled to a speedy trial under the Sixth Amendment. That he thought the State's position, in respect of the death sentence making the trial moot, was "well taken" seems, in the circumstances, to be merely dictum.

Hoss noted a timely appeal to that part of Judge Getty's order denying his motion to dismiss the indictments.

The Court of Special Appeals, speaking through Chief Judge Murphy, seems to have rejected the notion that Hoss's right "to a speedy trial under the 6th Amendment" makes it unnecessary to consider his contention "under the Interstate Detainer Act." Judge Murphy, for his court, said:

"* * * Maryland lodged its detainer against appellant with Pennsylvania prison authorities at a time when he was serving a ten to twenty

year sentence for rape; he had not then been convicted of the Pennsylvania murder. *Thus, at the time the detainer was filed, the appellant was serving a 'term of imprisonment' within the meaning of Section 616D of the Act and its provisions were clearly applicable to him.* Though subsequently convicted of murder and sentenced to death, appellant continued serving the sentence imposed upon him for rape, at least during pendency of his appeal and until the judgment imposing the death sentence became final." *Id.* at 410-411. (Emphasis added.)

But Judge Murphy went on to say that the "later imposition of the death sentence added a *new dimension* to the circumstances surrounding" Hoss's demand for trial under the provisions of the statute. (Emphasis added.) The petition for a continuance, he added, did show good cause "not on the basis that the Act [statute] did not apply, but rather because, in the circumstances, affirmance of the death sentence and its imposition would likely have mooted the Maryland cases." But, as we have observed, Judge Getty did not grant a continuance. The court, still speaking through Judge Murphy, attempted a finesse of this contretemps in these words:

"* * * but we think the [trial] court's failure to do so [rule on the petition for a continuance], coupled with the *actual postponement* of the trial previously set for January 11, 1971, was tantamount to the court['s] having timely granted the State's motion [petition] for the continuance for the reason, later expressed in its opinion, that the State's position was 'well taken'." (Emphasis added.) *Id.* at 411.

We do not see in this record anything which justifies the use of the expression "actual postponement." The trial date, 11 January, was allowed to come and go but before that day the trial judge did nothing more than

hear the arguments and announce that he would "render a decision as soon as * * * [he] had an opportunity to do so." He rendered his decision, such as it was, on 24 March, more than two months after Hoss filed his motion to dismiss the indictments. Neither do we agree that what Judge Getty did or did not do is tantamount to the timely granting of the continuance.

Section 616B of the statute, in part, is as follows:

> "The party states find that charges outstanding against a prisoner, detainers based on untried indictments, informations or complaints, and difficulties in securing speedy trial of persons already incarcerated in other jurisdictions, produce uncertainties which obstruct programs of prisoner treatment and rehabilitation. Accordingly, it is the policy of the party states and the purpose of this agreement to encourage the expeditious and orderly disposition of such charges and determination of the proper status of any and all detainers based on untried indictments, informations, or complaints."

The purpose of the statute as stated by Judge Murphy for the court below was "* * * to promote and foster prisoner treatment and rehabilitation programs by eliminating the uncertainties which accompany the filing of detainers." But he went on to say:

> "If appellant's only sentence was one of death, and that sentence was *final,* and *nothing remained but to execute it,* the * * * [statute's] purpose and provisions would manifestly have been inapplicable to him [Hoss]." (Emphasis added.) *Id.* at 411.

We incline to agree but on this record what Judge Murphy says seems to us to be inapposite. The death sentence was not final and in today's world it was folly to have supposed it ever would be. The Supreme Court of Pennsylvania could have vacated the sentence. And, as

has been said, it has done so. *Commonwealth, supra.*
Whether it will ever again be imposed and affirmed may
well be doubted. The governor can and may commute
the sentence. We have upheld the constitutionality of
the death sentence, *Brice v. State,* 264 Md. 352, 370-71
(1972), but of the 23 persons so sentenced since 1961,
not one has been put to death. Indeed, there have been
no executions in the United States since 1967. In *People
v. Anderson,* 100 Cal. Rptr. 152, 493 P. 2d 880, 894
(1972), Chief Justice Wright said for his court:

> "What our society does in actuality belies what
> it says with regard to its acceptance of capital
> punishment. Between 1930 and 1968, a total of
> 3,859 persons were executed in the United States
> as punishment for crimes ranging from murder
> to burglary and aggravated assault. The steady
> decrease in the number of executions from a
> high of 199 in 1935 to 2 in 1967 * * * demon-
> strates that capital punishment is unacceptable
> to society today."

The Supreme Court has declined to review *Anderson.*
And one must surely be aware of the fact that there are
now cases pending before the Supreme Court in which
the constitutionality of the death sentence under the
Eighth Amendment is in issue. *Aikens v. California,* No.
68-5027; *Furman v. Georgia,* No. 69-5003; *Jackson v.
Georgia,* No. 69-5030. Even if it could be said that the
petition for a continuance was "timely granted" we do
not agree that "good cause" was shown.

Speaking generally there can be no doubt that the dis-
position of petitions for a continuance are within the
sound discretion of the trial judge and his rulings in
this regard will not be disturbed absent an abuse of that
discretion. *McKenzie v. State,* 236 Md. 597, 601 (1964);
*Mazer v. State,* 231 Md. 40, 46 (1963); *Jackson v. State,*
214 Md. 454, 459 (1957); 5 Anderson, *Wharton's Crimi-
nal Law and Procedure* § 1930, 26 (1957). Here, how-

ever, the statute controls. The pertinent language of 616D (a) is as follows:

"* * * provided that for *good cause* shown in open court, the prisoner or his counsel being present, the court * * * may grant any *necessary* or *reasonable* continuance." (Emphasis added.)

To what we have said about "good cause" might be added the observation that the State neither claimed nor made a showing that a continuance of whatever duration was either "necessary" or "reasonable."

The statute specifies that it "shall be liberally construed so as to effectuate its purposes." Unlike the courts below we think its purposes go somewhat beyond "programs of prisoner treatment and rehabilitation." In *State v. Lippolis*, 107 N. J. Super. 137 (App. Div.), 257 A. 2d 705, 709-10 (1969), a case much like the case at bar, the trial court had dismissed an indictment for murder because the State failed to try the defendant within 180 days of his formal request, as required by the New Jersey statute effectuating the Interstate Agreement on Detainers. In its opinion affirming the trial court the Appellate Division said:

"* * * In view of the division of the Court in this case [one judge dissenting], it is appropriate to remind ourselves of the serious disadvantages of prisoners serving a term in one state but under detainer for untried indictments of another. This situation, relief of which is the heart of the policy of the interstate act, has been cogently summarized by Mr. Justice Stewart in *Smith v. Hooey*, 393 U. S. 374, 378-380, 89 S. Ct. 575, 577, 21 L.Ed.2d 607 (1969).[1] See also Note, 18 Rutgers L. Rev. 828, 833-34 (1964) ; Note, 77 Yale L. J. 767, 769-71 (1968).

"Lastly, the incidence of absence of prejudice to defendant in the court's allowing extensions

of time not requested by the prosecutor within the 180 days, mentioned in the dissent,[2] is quite irrelevant to the scheme and objectives of the act. The Legislature adopted the dismissal sanction not because a prisoner would be prejudiced at trial if trial were delayed more than 180 days after demand but because such a sanction for failure to try defendant within a fixed, reasonable period of time after demand was regarded as essential to produce general compliance with the statutory mandate. The sanction is a prophylactic measure to induce compliance in the generality of cases."

"[Footnote] 1.

'At first blush it might appear that a man already in prison under a lawful sentence is hardly in a position to suffer from "undue and oppressive incarceration prior to trial." But the fact is that delay in bringing such a person to trial on a pending charge may ultimately result in as much oppression as is suffered by one who is jailed without bail upon an untried charge. First, the possibility that the defendant already in prison might receive a sentence at least partially concurrent with the one he is serving may be forever lost if trial of the pending charge is postponed.[7] Secondly, under procedures now widely practiced, the duration of his present imprisonment may be increased, and the conditions under which he must serve his sentence greatly worsened, by the

---

2. The Supreme Court of New Jersey, in a per curiam decision, ultimately reversed the decision of the Appellate Division "for the reasons expressed in the dissenting opinion of Judge Kolovsky." 55 N. J. 354, 262 A. 2d 203 (1970). We find, however, no attenuation of the language and views expressed in the quoted passage from the opinion of the Appellate Division. Judge Kolovsky's dissent was focused primarily on the issue of granting a continuance after the expiration of the 180 day period.

pendency of another criminal charge outstanding against him.[8]

" 'And while it might be argued that a person already in prison would be less likely than others to be affected by "anxiety and concern accompanying public accusation," there is reason to believe that an outstanding untried charge (of which even a convict may, of course, be innocent) can have fully as depressive an effect upon a prisoner as upon a person who is at large. *Cf. Klopfer v. North Carolina, supra,* 386 U.S. [213] at 221-222, 87 S.Ct. [988] at 992-993, 18 L.Ed.2d [1] at 6, 7. In the opinion of the former Director of the Federal Bureau of Prisons,

"[I]t is in their effect upon the prisoner and our attempts to rehabilitate him that detainers are most corrosive. The strain of having to serve a sentence with the uncertain prospect of being taken into the custody of another state at the conclusion interferes with the prisoner's ability to take maximum advantage of his institutional opportunities. His anxiety and depression may leave him with little inclination towards self-improvement." [9]

" 'Finally, it is self-evident that "the possibilities that long delay will impair the ability of an accused to defend himself" are markedly increased when the accused is incarcerated in another jurisdiction. Confined in a prison, perhaps far from the place where the offense covered by the outstanding charge allegedly took place, his ability to confer with potential defense witnesses, or even to keep track of their whereabouts, is obviously impaired. And,

while "evidence and witnesses disappear, memories fade, and events lose their perspective," [10] a man isolated in prison is powerless to exert his own investigative efforts to mitigate these erosive effects of the passage of time.' (footnotes omitted)"

We draw some comfort from an awareness that our decision today is not likely to expedite Hoss's release from the bastilles of Pennsylvania. Indeed if the identifiable remains of the kidnapped mother and child are ever discovered a further indictment is possible. But even if Hoss were to be set free tomorrow we could not do otherwise. The indictments must be dismissed with prejudice.

> *Judgment of the Court of Special Appeals reversed. Costs to be paid by the State of Maryland.*