GLENN DAVID DAVIDSON *v.* STATE OF MARYLAND

[No. 522, September Term, 1972.]

*Decided June 4, 1973.*

62

The cause was argued before POWERS, CARTER and GILBERT, JJ.

*Harry J. Goodrick, Assistant Public Defender,* for appellant.

*Gilbert Rosenthal, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General,* and *Donaldson C. Cole, Jr., State's Attorney for Cecil County,* on the brief, for appellee.

CARTER, J., delivered the opinion of the Court.

The appellant, Glenn David Davidson, was convicted by a jury in the Circuit Court for Cecil County of assault and grand larceny and was duly sentenced. He contends (1) the indictment should have been dismissed with prejudice because: (a) the State failed to bring him to trial within 180 days after his request for final disposition was "caused to be delivered" to the Maryland authorities in accordance with

the requirements of the Interstate Agreement on Detainers,[1] (hereafter referred to as IAD), (b) he was denied his constitutional right to a speedy trial; and (2) the evidence was legally insufficient to establish the market value of the stolen goods at $100 or more.

The appellant was indicted by the Grand Jury for Cecil County on December 15, 1970, and arraigned on December 22, 1970. Soon thereafter he escaped from the Cecil County jail and was arrested in Delaware for criminal acts committed in that State. After his arrest the officials of Cecil County placed a detainer against him with the prison authorities in Delaware. While imprisoned awaiting trial, he wrote Judge H. Kenneth Mackey of the Circuit Court for Cecil County on February 16, 1971, requesting a speedy trial of the charges then pending against him in Maryland. Judge Mackey replied on February 18, 1971, and advised him to proceed under the IAD and that he could probably obtain the necessary forms to do so from the authorities at the Delaware institution where he was imprisoned. The State's Attorney for Cecil County was informed by the court of the contents of the correspondence.

After the appellant was tried and sentenced on the Delaware charges, he executed the notice and request that is required by § 616D (a) of the IAD (form II). This form was dated July 13, 1971 [2] and addressed to the State's Attorney for Cecil County and to the Circuit Court for that County. The executed form identified the institution in Delaware where the appellant was imprisoned and requested that he be returned to Maryland and promptly tried on the charges here pending against him in accordance with the requirements of § 616D (a). According to the understanding

---

1. The IAD was promulgated by The Council of State Governments about 1957 and has since been adopted by forty states, the Federal Government, and the District of Columbia. See records of The Council of State Governments.

2. Confusion at the hearing as to whether form II was executed on July 13, 1971 when it was dated or on April 13, 1972, which date appeared at the bottom of the true test certification is readily explainable. The date at the bottom of the form is clearly shown by the evidence to be the date the true copy certification was made of form II after it was introduced in evidence in a court proceeding in Delaware.

which he had with the Delaware authorities, they were to forward his executed form II, together with other necessary papers, to the Circuit Court and State's Attorney for Cecil County. The Delaware authorities failed to do so. On April 3, 1972 the appellant filed a motion to dismiss the indictment pending against him in Cecil County, claiming that the State of Maryland had failed to bring him to trial within 180 days from the date he executed and "caused to be delivered" the notice and request on July 13, 1971, as required by § 616F (c) of the IAD. The time elapsing between July 13, 1971 and April 3, 1972 was 264 days.

At the preliminary hearing on the motion, the appellant testified that he had received a copy of a certified letter dated July 14, 1971, that appeared to have been sent by the Delaware authorities to the State's Attorney for Cecil County. He claimed the copy he received showed that form II executed by him and other papers executed by the Delaware authorities were enclosed with the letter. He did not produce his copy of the letter, however, and the copy that was proffered was not admitted in evidence because of a failure to establish its authenticity. The appellant further testified that he had a receipt signed by the secretary of the State's Attorney for the certified letter allegedly forwarded. No such receipt, however, was produced at the hearing.

The State's Attorney for Cecil County also testified at the hearing and categorically denied ever receiving any forms, notice, or request from the Delaware authorities or the appellant concerning disposition of the Maryland charges other than the appellant's letter to Judge Mackey in February 1971. He further denied any knowledge of the receipt by his secretary of a certified letter from the Delaware authorities. At the time of the hearing, the secretary was no longer employed by the State's Attorney and did not testify. A Deputy Clerk of the Circuit Court denied that office had ever received any notice or request from the appellant or the Delaware authorities in regard to the Maryland charges other than the letter to Judge Mackey.

On June 5, 1972, the court denied the motion and on June 29-30, 1972, the appellant was tried on the Maryland charges and convicted.

## I

## MOTION TO DISMISS INDICTMENT FOR FAILURE TO COMPLY WITH THE IAD

Maryland adopted the IAD with supplemental provisions by Chapter 627 of the Acts of 1965 (Md. Code, Art. 27, § 616A-R). At the time the appellant was imprisoned in Delaware, that State had also adopted the IAD. See 11 Del. Code, §§ 2540-2550 (1969). Md. Code, Art. 27, § 616A-R provides in pertinent parts:

### Article III

"§ 616D. Request for disposition of untried indictment, etc.

(a) *Notice of imprisonment and request for disposition; time of trial; continuance; certificate of official having custody.* — Whenever a person has entered upon a term of imprisonment in a penal or correctional institution of a party state, and whenever during the continuance of the term of imprisonment there is pending in any other party state any untried indictment, information or complaint on the basis of which a detainer has been lodged against the prisoner, he shall be brought to trial within one hundred eighty days *after he shall have caused to be delivered to the prosecuting officer and the appropriate court of the prosecuting officer's jurisdiction written notice of the place of his imprisonment and his request for final disposition to be made of the indictment, information or complaint: * * *.* The request of the prisoner shall be accompanied by a certificate of the appropriate official having custody of the prisoner, stating the term of commitment under which the prisoner is being held, the time already served, the time remaining to be served on the sentence, the amount of good time earned, the time of parole eligibility of the prisoner, and any decisions of the state parole agency relating to the prisoner. (emphasis added)

"(b) *To whom notice and request sent.* — The written notice and request for final disposition referred to in subsection (a) hereof shall be given or sent by the prisoner to the warden, commissioner of corrections or other official having custody of him, who shall promptly forward it together with the certificate to the appropriate prosecuting official and court by registered or certified mail, return receipt requested.

\* \* \*

*Article V*

§ 616F. Temporary custody for prosecution.

(c) *Dismissal of indictment, etc.* — \* \* \* [I]n the event that an action on the indictment, \* \* \* on the basis of which the detainer has been lodged is not brought to trial within the period provided in Article III \* \* \* hereof [180 days], the appropriate court of the jurisdiction where the indictment, \* \* \* has been pending shall enter an order dismissing the same with prejudice, and any detainer based thereon shall cease to be of any force or effect.

\* \* \*

*Same—Supplemental Provisions*

"§ 616Q. Notice not deemed to have been given until actually received.

As to any request by a person imprisoned in another party state for trial in this State, written notice *shall not be deemed to have been caused to be delivered to the prosecuting officer and the appropriate court of this State in accordance with § 616D (a),* \* \* \* *until such notice or notification is actually received by the appropriate court and by the appropriate State's attorney of this State,* his deputy, an assistant, or any other person empowered to receive mail on behalf of the State's attorney. \* \* \* " (emphasis added)

Section 616Q of Article 27 is peculiar to Maryland and was a supplemental provision to the IAD at the time the IAD was adopted in this State. We think it clear from the language employed in § 616Q that the legislative intent in adopting it was to restrict and clarify the notice provision of § 616D (a). That is, to restrict this provision so that the 180 day period referred to therein should not begin to run until the prisoner's notice and request are *actually received* by the appropriate prosecuting officer and court in this State. Without such specification, the notice provision is unclear as to whether the 180 day period begins to run (1) when the prisoner delivers his notice and request to the warden of the institution where he is imprisoned in the party state, as required by § 616D (b), or (2) when the warden sends the notice and request to the prosecutor and the trial court in the State issuing the detainer, as also required by § 616D (b), or (3) when the notice and request are actually received by the prosecutor and the appropriate court in the State issuing the detainer. This supplemental section also prevents a prisoner from becoming entitled to a dismissal of charges against him in situations where the prosecutor and the trial court do not have actual notice of his request. A contrary result has been reached by the interpretations placed on the IAD in other jurisdictions that have not adopted supplemental provisions comparable to § 616Q.[3]

The appellant's contention that his letter to Judge Mackey requesting a prompt trial constituted sufficient notice to comply with the requirements of § 616D (a) is without merit. At the date of this letter the appellant had not "entered upon a term of imprisonment in a penal or correctional institution of a party state", which is made a condition precedent to his eligibility to apply for the benefits of the IAD by the provisions of § 616D (a). As his letter of February 16, 1971 indicates, he was then confined in a Delaware prison "awaiting trial." We therefore hold that the letter did not

---

3. See *Pittman v. State*, (Del. Supreme Court 1973), 301 A. 2d 509; *State v. Lippolis*, 101 N. J. Super. 435, 244 A. 2d 531, 536 (1968), rev. on other grounds, 55 N. J. 354, 262 A. 2d 203 (1970); *People v. Esposito*, 201 N.Y.S.2d 83, 90 (1960).

constitute a notice and request as required by § 616D (a). See *State v. Long*, 1 Md. App. 326, 333, 320 A. 2d 119.

We conclude that the trial judge was not clearly in error in finding from the evidence that neither the prosecutor nor his secretary nor the Circuit Court actually received any notice or request from the appellant or the Delaware authorities that he be afforded a prompt trial in accordance with the requirements of the IAD. We further conclude that based on these findings, Judge Roney was not in error in denying the appellant's written motion to dismiss the indictment based on a failure to comply with the IAD.

## II

### *MOTION TO DISMISS INDICTMENT BECAUSE OF DENIAL OF SPEEDY TRIAL*

The appellant also contends that he was denied his constitutional right to a speedy trial guaranteed by the Sixth Amendment to the Constitution and Article 21 of the Maryland Declaration of Rights [4] as a basis for his motion to dismiss the indictment. At the beginning of the hearing, he made a verbal motion in open court to dismiss the indictment on this basis, in addition to his written motion to dismiss because of non compliance with the IAD. The trial judge ruled, however, that inasmuch as the appellant had not filed a previous written motion setting forth this contention, he would only hear the motion to dismiss in so far as it related to the IAD. Consequently, the issue involving the appellant's constitutional right to a speedy trial was not decided by the trial court. Md. Rule 725 (c) allows a motion during a hearing to be made orally.

While ordinarily this Court will not consider a question that was not decided below, it may do so where the question

---

**4.** In *Hoss v. State*, 13 Md. App. 404, 283 A. 2d 629 (reversed on other grounds, 226 Md. 136, 292 A. 2d 48), we said at 412:

" * * * The right [to a speedy trial] is not lost simply because the accused is incarcerated in a penal institution in another state. *Dickey v. Florida, supra* [398 U. S. 30]; *Smith v. Hooey*, 393 U. S. 374. * * * "

was presented and a decision is deemed desirable to avoid the expense and delay of another appeal. Md. Rule 1085. Under the authority of this Rule, we deem a decision of the question of a denial of a speedy trial desirable in this case.

In *Barker v. Wingo*, 407 U. S. 514, 33 L.Ed.2d 101, 92 S. Ct. 2182 (1972), the United States Supreme Court recently enunciated the factors to be considered in determining the constitutional right of an accused to a speedy trial. The Court, speaking through Mr. Justice Powell, said at 116-117:

> " * * * The approach we accept is a balancing test, in which the conduct of both the prosecution and the defendant are weighed.
>
> A balancing test necessarily compels courts to approach speedy trial cases on an ad hoc basis. We can do little more than identify some of the factors which courts should assess in determining whether a particular defendant has been deprived of his right. Though some might express them in different ways, we identify four such factors: Length of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant."

### LENGTH OF DELAY NOT OF CONSTITUTIONAL DIMENSIONS

In speaking of the "length of delay" factor, this Court said in *State v. Hunter*, 16 Md. App. 306, 311, 295 A. 2d 779:

> " * * * [I]n order to calculate a constitutionally proscribed delay in bringing a matter to trial, we must look back to the date of the commencement of the prosecution by way of arrest, warrant, information or indictment, whichever shall first occur, and then forward to the date of trial or hearing. * * * "

See also *United States v. Marion*, 404 U. S. 307, 30 L.Ed.2d 468, 92 S. Ct. 455; *State v. Hamilton*, 14 Md. App. 582, 287 A.

2d 791. In the case before us the greatest possible period of delay, assuming that the appellant was arrested the same day the crime was committed,[5] would be from November 3, 1970 to the date of trial on June 29, 1972, or nineteen months and twenty-six days. The evidence shows, however, that a relatively small portion of the delay included in this period can be attributed to the State of Maryland.

This Court has repeatedly held that only the portion of the total delay period which is fairly attributable to this State is to be considered in determining the "length of delay" factor. See *State v. Dubose*, 17 Md. App. 292, 295, 301 A. 2d 32; *State v. Lawless*, 13 Md. App. 220, 230, 283 A. 2d 160; *Smith v. State*, 11 Md. App. 631, 634, 276 A. 2d 228; *King v. State*, 5 Md. App. 652, 667, 249 A. 2d 468.

The "certificate of inmate status" (form III under the IAD), which was considered by the trial court at the hearing, showed that the appellant escaped from Cecil County on or about January 4, 1971 and was incarcerated in Delaware on January 6, 1971 for criminal acts committed in that State. The testimony adduced at the hearing showed that he remained incarcerated in Delaware from January 6, 1971 until he was returned to Cecil County sometime in May 1972 (the exact date was not shown) as a result of the filing of his motion on April 3, 1972 to dismiss the Cecil County indictment.

From our independent review of the record, we find that the portion of the delay period that was represented by the time the appellant was imprisoned in Delaware (16 months) was not caused by nor attributable to the State of Maryland. By the appellant's escape on or about January 4, 1971, he prevented this State from proceeding with the prosecution of the charges against him. Within two days thereafter he committed criminal acts in Delaware which resulted in his incarceration in that State and the ultimate imposition of a ten-year prison sentence. When he applied to the Circuit Court for Cecil County for a speedy trial of the charges

---

5. The record is silent in regard to the date the appellant was actually taken into custody.

pending against him in that County in February 1971, he was promptly advised to proceed under the IAD. His failure to do so successfully was due to the neglect of the Delaware prison officials in forwarding his notice and request to the appropriate Cecil County officials, and was in no way due to any act of representatives of the State of Maryland. The Maryland prosecutor testified that when he failed to receive any notice of the appellant having initiated any proceeding under the IAD, in accordance with the suggestion of Judge Mackey, he assumed that the appellant had abandoned the idea. We think in the circumstances of this case that this assumption was a reasonable one. We therefore find that the 16 month period during which the appellant was incarcerated in Delaware was not chargeable to the State of Maryland. We also find, however, that this State was chargeable with the delay that occurred during the interval between the date of the appellant's arrest and his escape and the period between his return to Cecil County in May 1972 and the date of his trial, or for a period of approximately four months while he was physically present in Cecil County.

In *Barker, supra* at 117, the Supreme Court said: "until there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors that go into the balance." In *State v. Lawless, supra* at 231, this Court held that unless it appears that the time of the delay is "beyond that which is the obvious requirement of orderly procedure", there is no need to make further inquiry into the other pertinent factors. See also *Jones v. State,* 10 Md. App. 420, 428, 270 A. 2d 827; *Brown v. State,* 10 Md. App. 462, 466, 271 A. 2d 182.

Applying the above-enunciated principles to our independent findings of the facts heretofore related, we hold that the four months delay chargeable to Maryland is not "presumptively prejudicial" nor "beyond that which is the obvious requirement of orderly procedure." We therefore conclude that the appellant has failed to show a delay chargeable to this State that was of constitutional dimensions. Consequently, there is no necessity to inquire

further into the other factors relevant to a determination of the right to a speedy trial.[6]

Even if we assume *arguendo* that the delay attributable to this State was of constitutional dimensions, the appellant has nevertheless failed to show a deprivation of the right. That is, he has failed to show (1) a substantial "length of delay", (2) any purposeful or oppressive acts by the State as the "reason for the delay", and (3) any prejudice to his person or to his defense. See *Barker, supra* at 117-118; *Lawless, supra* at 243. Since by our holding in respect to the period of delay we have in effect said that it was "not substantial", the appellant has the burden of proof in regard to prejudice as well as the other factors. See *Lawless, supra* at 234-236; *Wilson v. State,* 8 Md. App. 299, 306, 259 A. 2d 553.

We conclude therefore that the appellant has failed to establish that he was deprived of his constitutional right to a speedy trial.

### III

### *SUFFICIENCY OF THE EVIDENCE*

The appellant's contention concerning the insufficiency of the evidence is confined to that offered to establish that the market value of the stolen tires was $100 or more at the time of the theft so as to constitute grand larceny under the statute (Md. Code, Art. 27, § 340). The evidence on this point was confined to the testimony of Mr. Wilson, president and general manager of the corporation (Ford Agency) that owned the stolen tires. The State inquired of him "as to what the value of these missing tires would be * * *." He replied, "In my opinion, it would be $164 at that time." There was no objection to this testimony and consequently its admissibility is not before us for review. Md. Rule 1085. We think it is implicit in Mr. Wilson's testimony as to the *value* of the tires that he was referring to *fair market value.* See

---

**6.** In *State v. Hunter, supra* at 315-316, we held that a delay of five and one-half months was not of constitutional dimensions. We made a similar holding in regard to a period of four months delay in *Jones v. State, supra* at 428.

*Vucci v. State*, 13 Md. App. 694, 701-702, 284 A. 2d 646; *Mason v. State*, 9 Md. App. 61, 63, 262 A. 2d 576.

We therefore conclude that the evidence was legally sufficient to establish that the fair market value of the stolen tires was in excess of $100 at the time of the theft.

## MOTION TO CORRECT OMISSION IN RECORD

We have considered the appellant's motion to correct an omission in the record filed pursuant to Md. Rule 1027. That part of the motion which relates to copies of the papers allegedly forwarded to the State's Attorney is granted for the reason that these copies were considered by the trial court. That portion of the motion is denied which relates to copies of the papers that were allegedly received by the Office of the Attorney General and a copy of the receipt of certified mail allegedly sent by the appellant to the State's Attorney. These last mentioned items were neither offered in evidence nor considered by the trial court and therefore do not constitute "omissions in the record" within the scope of Rule 1027.

*Judgments affirmed.*