# STATE OF MARYLAND *v.* BARNES

[No. 33, September Term, 1974.]

*Decided November 26, 1974.*

196

The cause was argued before SINGLEY, SMITH, DIGGES, LEVINE, ELDRIDGE and O'DONNELL, JJ.

*Alexander L. Cummings, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Milton B. Allen, State's Attorney for Baltimore City,* and *Peter Ward, Assistant State's Attorney for Baltimore City,* on the brief, for appellant.

*Geraldine Kenney Sweeney, Assistant Public Defender,* with whom was *Dennis M. Henderson, Assistant Public Defender,* on the brief, for appellee.

O'DONNELL, J., delivered the opinion of the Court.

The respondent, Roland Douglas Barnes, came into the custody of the House of Correction on May 18, 1972, pursuant to a sentence to serve a one-year term for assault, dating from April 26, 1972, imposed by the District Court.[1] In any event, on the day before his arrival — May 17, 1972 — he was both presented and indicted by the Grand Jury for the City of Baltimore for the murder of one Leotho Holloway on February 1, 1972.[2] As a result of the Grand Jury action and the *capias* issued thereon, the Sheriff of Baltimore City on May 26, 1972 filed a detainer with the Warden of the House of Correction. The respondent was officially notified of the detainer four days later.

On June 9, 1972, a letter dated June 5, with enclosures attached[3] was sent by certified mail — return receipt

---

[1]. The record does not disclose whether the respondent was sentenced on April 26 or May 18, 1972; nor whether he was given credit upon his sentence for any period spent in jail awaiting trial; nor whether he was originally committed to the Reception, Diagnostic and Classification Center and from there transferred to the House of Correction.

[2]. It appears that at his trial the date charged in the indictment was amended to read "February 2, 1972."

[3]. The enclosures attached to the respondent's letter were all upon forms

requested — on behalf of the respondent by the Warden to Milton B. Allen, the State's Attorney for Baltimore City requesting that the indictment upon which the detainer was based "be disposed of as soon as possible." Endorsed on the bottom of the letter was a notation that a copy thereof, as well as of the enclosures, were being sent to the Clerk of the Criminal Court of Baltimore, with copies for the inmate and his institutional file. One of the enclosures contained a request by the respondent that counsel be assigned him. A classification counselor at the House of Correction testified that personnel in that office processed the paper work on behalf of the inmates; that although the original letter and enclosures were sent to the State's Attorney by certified mail, copies addressed to the Clerk of the Criminal Court, at that time, were sent by first-class mail.[4] He further testified that there was nothing in the file to establish the date on which the copies addressed to the Clerk were actually mailed.

The letter addressed to the State's Attorney (with enclosures) was date-stamped as having been received in that office on June 12 and the return receipt is so postmarked. In accordance with established inter-office procedures the State's Attorney forwarded the documents to the Criminal Assignment Office of the Supreme Bench of Baltimore City, the agency designated for the assignment of criminal cases for trial; according to the date stamp affixed on the documents in the assignment office it took just seven days for the documents to journey from one floor of the Court House to the next. The Criminal Assignment Office noted on the documents that it was a request for "Speedy

---

used by the House of Correction; they were: (1) "Notice of Untried Indictment, Information or Disposition and of Right to Request Disposition," (2) "Notice of Place of Imprisonment and Request for Disposition of Indictments, Informations or Complaints," and (3) "Certificate of Inmate's Status." The State's Attorney in the trial court conceded that the three enclosed forms substantially, in form, complied with the provisions of Maryland Code (1957, 1971 Repl. Vol.) Art. 27, § 616S (a).

4. We were advised that because of budget limitations it was then the policy to send the copies by first-class rather than certified mail, but that at the time of the hearing copies as well were sent by certified mail.

Trial," placed a notation to that effect on their control card and returned the documents to the Case Preparation Section of the State's Attorney's office to await a certification of readiness for trial. The Acting Criminal Assignment Commissioner testified that although it was the responsibility of that office to notify the Public Defender of those defendants, incarcerated within the Department of Correctional Services, awaiting trial on other charges who requested the assignment of counsel, such notification in the respondent's case was not given until the "early part of November."

Other than the notation upon the letter to the State's Attorney that a carbon copy was being sent to the Clerk of the Criminal Court, there was no record of the date on which the copies were mailed; the Clerk testified that after making a persistent and diligent search the copies were found, with no recorded date of receipt, misfiled alphabetically under "S." [5]

For 139 days the respondent's request for trial was negatively — if not affirmatively — ignored, since it was only on November 6, 1972, that the Public Defender appointed a panel attorney to represent the respondent. Following a pretrial conference on December 19, 1972, between his counsel and an Assistant State's Attorney, February 21, 1973, was fixed as the first available open date for the jury trial requested by the respondent.

On December 21, 1972, the respondent, *pro se*, filed a "Motion for Writ of Default" which prayed that the murder indictment be dismissed for failure of the State's Attorney to comply with the provisions of Maryland Code (1957, 1971 Repl. Vol.) Art. 27, § 616S, in that he had not been brought to trial within the time provided from the receipt by the State's Attorney of his request for trial.

When, on the appointed day, the murder indictment came on for trial in the Criminal Court of Baltimore, the trial court (Levin, J.), although recognizing our holdings in *Hoss*

5. No explanation whatever was given for this clerical ineptitude; the respondent's full name was typed on all the documents transmitted and an inspection thereof leaves completely inexplicable such misfiling.

*v. State,* 266 Md. 136, 292 A. 2d 48 (1972), *rev'g Hoss v. State,* 13 Md. App. 404, 283 A. 2d 629 (1971), under the provisions of the Interstate Agreement on Detainers Act (Art. 27, §§ 616A-616R), was nonetheless persuaded that the holdings by the Court of Special Appeals in *King v. State,* 5 Md. App. 652, 249 A. 2d 468 (1969), under the Intrastate Detainers Act (Art. 27, § 616S) mandated a strict and literal compliance with the provisions of the section. Finding that the Clerk of the Criminal Court did not receive its copy of the respondent's request by certified mail and absent proof of the exact date on which the copies were mailed, or actually received by the Clerk, the trial court held that the Act was not strictly complied with and denied the motion to dismiss the indictment. Following a jury trial, the respondent, on February 23, 1973, was found guilty of murder in the first degree. Upon appeal to the Court of Special Appeals that court, upon the authority of our holdings in *Hoss v. State, supra,* reversed the judgment imposed and ordered the case remanded for dismissal of the indictment. *Barnes v. State,* 20 Md. App. 262, 315 A. 2d 117 (1974). We issued a writ of certiorari upon the petition of the Attorney General on behalf of the State.

The pertinent provisions of the Intrastate Detainer Act here in issue (Art. 27, § 616S) read as follows:

"(a) *Request by prisoner; statement from warden having custody.* — Whenever the Department of Correction receives a detainer against any prisoner serving a sentence in any correctional institution under the jurisdiction of the Department or whenever any county or city jail receives a detainer against any prisoner serving a sentence in the county or city jail any *such prisoner shall be brought to trial within 120 days after the request of the prisoner for final disposition of the indictment,* information, or complaint has been *delivered to the State's Attorney of the City of Baltimore or of the county in which the indictment,* information, or complaint *is pending and to the appropriate court;* provided that for good cause

shown in open court, the prisoner or his counsel being present, the court having jurisdiction of the matter may grant any necessary or reasonable continuance. The request of the prisoner shall be filed within 30 days of the prisoner's notification of any untried indictment, information, or complaint and shall be accompanied by a statement from the warden or superintendent having custody, setting forth the term of the commitment under which the prisoner is being held, the time already served, the time remaining to be served on the sentence, the amount of good time earned, the date of parole eligibility of the prisoner, and any decisions of the Board of Parole and Probation relating to the prisoner. The *written notice and statement provided herein shall be delivered by certified mail.*

\* \* \*

(c) *Dismissal when action not commenced. — If action is not commenced* on the matter for which request for disposition was made, *within the time limitation set forth in subsection (a) above, the court shall no longer have jurisdiction thereof,* and the *untried indictment shall have no further force or effect;* and in such case the *court shall enter an order dismissing the untried indictment with prejudice.*" (Emphasis supplied.)

The Court of Special Appeals, in ordering the dismissal of the murder indictment upon which the respondent was tried, held "that a delivery of the necessary papers to the assignment office is a delivery to the appropriate court," and that "[i]mmaterial nonconformity, however, will not vitiate the prisoner's entitlement under the statute." In applying our holding in *Hoss v. State, supra,* Judge Thompson, for the court, stated:

"We find the Intrastate Act and the Interstate Agreement to be identical as to purpose and rationale. Hence, we apply to the Intrastate Act the

liberal construction requirement of Section 616J, in order to encourage expeditious and orderly disposition of outstanding charges against a prisoner then incarcerated under a term of imprisonment. § 616B. *When the State's Attorney and the appropriate court receive actual notice, the statute has been substantially complied with even though the court did not receive its copy via Certified Mail,* [Footnote omitted] as § 616S (a) expressly requires. Failure to bring the appellant to trial within 120 days from the date of delivery to the State's Attorney (June 12, 1972) and the appropriate court (June 19, 1972), requires that the subject indictment be dismissed with prejudice. § 616S (c).

As we indicated earlier, our decision is dictated by *Hoss v. State, supra,* wherein it was held the provisions of the Interstate Statute were properly invoked and, being self-executing required that the indictment be dismissed. *Hoss, supra* at 146, quoted from *State v. Lippolis,* with approval:

'The Legislature adopted the dismissal sanction not because a prisoner would be prejudiced at trial if trial were delayed more than 180 days after demand but because such a sanction for failure to try defendant within a fixed, reasonable period of time after demand was regarded as essential to produce general compliance with the statutory mandate. The sanction is a prophylactic measure to induce compliance in the generality of cases.' " [6]

(Emphasis supplied.) 20 Md. App. at 268, 315 A. 2d at 121.

In *Hoss, supra,* the appellant, awaiting sentencing for rape in Pennsylvania, escaped on September 9, 1969; ten days

---

6. State v. Lippolis, 107 N.J.Super. 137 (App. Div.) 257 A. 2d 705 (1969), *rev'd on other grounds,* 55 N. J. 354, 262 A. 2d 203 (1970).

thereafter he killed a Pennsylvania policeman for which he was indicted. On September 22nd a Maryland woman and her daughter, together with the vehicle in which they were riding, disappeared. Hoss was indicted in Allegany County, Maryland, for the kidnapping and abduction of the woman and her child and for the larceny of her motor vehicle. Following his capture in Iowa and return to Pennsylvania he was sentenced for rape to a term of from ten to twenty years. In July 1970, after Hoss' conviction of the murder of the police officer, but before sentencing, Maryland authorities filed interstate detainers with the Pennsylvania Bureau of Corrections. In September 1970 the death penalty was imposed on his murder conviction. Before that sentencing Hoss invoked the provisions of the Interstate Agreement on Detainers Act (§§ 616A-616R) for final disposition of the Maryland indictments; this he supplemented with motions, in proper person, demanding a speedy trial and against any continuance, insisting that unless his trial was initiated promptly he would lose the benefit of testimony vital to his defense. His case was set for trial on January 11, 1971 — within the 180 day provision of Art. 27, § 616D. Prior to trial the State moved for a continuance, asserting that the probable affirmance of his conviction and the execution of the death sentence would render the Maryland trial moot, and that the purpose of the statute, being rehabilitative in nature, should not be applied in the case of one on whom the death sentence had been imposed. The trial court held the motion *sub curia* until after the 180 day period was tolled, and on March 24, 1971, ruled that Hoss was entitled to a "speedy trial" but was not entitled to a dismissal of the indictments under the Act.

This Court, noting that the provisions of § 616J declared that the statute " 'shall be liberally construed so as to effectuate its purposes' " and finding that the purposes of the statute "go somewhat beyond 'programs of prisoner treatment and rehabilitation,' " held that the provisions of §§ 616D and 616F were self-executing, unless a continuance had been granted in accordance with the provisions of § 616D, and that the failure of the trial court to rule upon the

motion for continuance within the 180 day period required the dismissal of the indictments pending against Hoss. The Court rejected the view adopted by the trial court and followed by the Court of Special Appeals that the " 'imposition of the death sentence added a *new dimension* to the circumstances surrounding' Hoss' demand for trial under the provisions of the statute," and held further that even if the motion of the prosecution for continuance had been "timely granted" it would not have constituted "good cause" for "any necessary or reasonable continuance" under § 616D (a).[7]

In this Court, in urging a reversal, counsel for the petitioner argues that under the provisions of Art. 27, § 616S, two requirements, *inter alia,* must be met: (a) the necessary documents (requesting a trial of the indictment which is the subject matter of the detainer and the accompanying statement from the warden) must be delivered both to the State's Attorney and to the "appropriate court," and (b) both sets of documents must be delivered by certified mail. Subordinate to that argument it is contended that the Court of Special Appeals erroneously relied upon the holdings in *Hoss v. State, supra,* in that our decision there, holding that the provisions of the Interstate Agreement on Detainers Act were to be liberally construed and were self-executing, was limited to interstate cases (under Art. 27, §§ 616A-616R), whereas, the Court of Special Appeals in *King v. State,* 5 Md. App. 652, 249 A. 2d 468 (1969), followed in *Carter v. State,* 15 Md. App. 242, 289 A. 2d 837, *cert. denied,* 266 Md. 734 (1972), and in *Gibson v. State,* 17 Md. App. 246, 300 A. 2d 692 (1973), has consistently held that the provisions of the Intrastate Detainer Act (under Art. 27, § 616S) — the section here applicable — mandated a strict construction of the latter statute for intrastate cases.

Counsel for the respondent counters and argues not only

---

7. *Compare* Dennett v. State, 19 Md. App. 376, 311 A. 2d 437 (1973), *cert. denied,* 271 Md. 734 (1974), holding that a continuance requested by the defendant within the statutory period for the completion of discovery was for "good cause" under § 616D (a).

were the provisions of § 616S gratified, by the actual notice received in the Criminal Assignment Office, but that the provisions of both the interstate and intrastate acts are remedial in nature, are in *pari materia,* are identical "as to purpose and rationale," and that both should be liberally construed to effectuate the objects of the legislation; they urge us to overrule the holdings in *King v. State* to the extent that *King* may here be applicable, contending that if there was a statutory noncompliance, it was caused by the action of state personnel at the House of Correction when they failed to dispatch the copies by certified mail.

We do not read *King v. State* as mandating that § 616S be strictly construed. The Court of Special Appeals, after analyzing the step-by-step procedure required under the statute found an utter noncompliance with its terms. Judge Orth (now Chief Judge of that Court) noted that "[w]hile the [Intrastate Detainer] Act may be praised for its objective, it may be more damned for its provisions establishing the procedure to attain the objective." After finding that the provisions "lack[ed] sanctions to compel compliance with them," he noted that although "we may construe statutes within the legislative intent, we cannot enact legislation and we may not presume a sanction when none is provided."

In holding, upon the facts of the case, that the procedure specified in the statute had not been followed, he stated:

> "The evidence did not establish that the appellant made request for final disposition of the untried complaints within 30 days of notification of them. The Act was not available to the appellant for that reason. Even on an assumption that the letter of 15 September 1967 was such request, and that it was filed on time, it was not accompanied by a statement from the warden containing the information required by the Act. The Act was not available to the appellant for that reason. And even if the evidence before the court be considered as showing that the appellant was precluded from filing the request as required because the warden, although he had knowledge, did not inform the

appellant of the source and contents of the untried complaints and of the appellant's right to request final disposition thereof, [Footnote omitted] no relief was available to the appellant under the Act. And even had the evidence proved that the appellant made request as required but that the warden failed to deliver it, accompanied by the statement, to the appropriate State's attorney and the court, no relief was available to the appellant under the Act. In short, for reasons we have hereinbefore stated, *since it was not established that the appellant and the prison officials did all that they were called upon to do by the provisions of the Act, the Act was not invoked, no matter where the fault lay.*" (Emphasis supplied.) 5 Md. App. at 665-66, 249 A. 2d at 476-77.

Similarly, neither *Carter v. State, supra,* nor *Gibson v. State, supra,* are authority for the proposition that § 616S must be strictly construed. In both those cases the section was held inapplicable since in neither had any detainer or notice of a detainer been placed on file with the warden of the institution where the respective appellants were confined. *See also Davidson v. State,* 18 Md. App. 61, 305 A. 2d 474, *cert. denied,* 269 Md. 757 (1973), where the appellant at the time he attempted to invoke the [interstate] Act was awaiting trial in a Delaware prison and had not entered upon a "term of imprisonment" as required for the application of § 616D (a).

It has long been recognized that detainers for untried charges — whether interstate or intrastate in nature — may result in "undue and oppressive incarceration." Undue delay in the disposition of such detainers has been recognized as minimizing the possibility that a defendant incarcerated might receive a sentence at least partially concurrent with the term he is serving and that under the procedures widely practiced, the duration of his imprisonment may be increased and the conditions under which his confinement must be served greatly worsened because of the pendency of an additional charge against him and the potentiality of

additional punishment. Similarly, it has been recognized that a long delay in the trial of the detainer charge may impair the ability of the accused to defend himself since he is often in a prison far removed from the place where the added offense allegedly took place, resulting in an impairment of his ability to keep apprised of the whereabouts of witnesses, and isolates him from the ready availability of the assistance of his counsel. It has even been stated that the pendency of such a detainer constitutes a serious impediment to the prisoner's ability to take maximum advantage of the institutional opportunities for rehabilitation. *See Smith v. Hooey*, 393 U. S. 374, 378-80 (1969). *See also* Note, 77 Yale L.J. 767, 769-71 (1968); Note, 18 Rutgers L. Rev. 828, 833-34 (1964). In some jurisdictions the pendency of such a detainer precludes the prisoner from eligibility for parole consideration; in others it excludes him from placement on work-release programs, and it has been known, because of the potentiality of escape, to cause the prisoner to be confined under more strict and harsh security measures than might otherwise be applicable to his case, except for the detainer on file.[8]

In an effort to ameliorate such conditions, which were found to "produce uncertainties which obstruct programs of prisoner treatment and rehabilitation" and in order "to encourage the expeditious and orderly disposition of such charges," the General Assembly, by Ch. 627 of the Acts of 1965, enacted the Interstate Agreement on Detainers Act (codified as Art. 27, §§ 616A-616R)[9] and complementary thereto, at the same session, by Ch. 628, enacted our own version of an Intrastate Detainer Act (codified as Art. 27, § 616S).[10]

---

8. *See* Smith v. Hooey, 393 U. S. 374, 378-79, n. 8 (1969).

9. *See* Code, Art. 27, § 616B. The Interstate Agreement on Detainers Act has now been adopted in 42 states, by the United States Government and by the District of Columbia. *See* 11 U.L.A., Disposition of Detainers, at 322-23 (1974).

10. By Ch. 628 of the Acts of 1965 we declined to adopt the provisions of the Uniform Mandatory Disposition of Detainers Act, approved by the National Conference of Commissioners on Uniform State Laws and the American Bar Association, which has been adopted in only seven states. One salient omission from § 616S is the sanction provided under § 1 (c) of the Uniform Mandatory Disposition of Detainers Act providing for the

The provisions of § 616S were obviously intended to be supplementary to the provisions of the interstate act and being component parts of the same general system they should be construed together to the extent possible. *See Domain v. Bosley*, 242 Md. 1, 7, 217 A. 2d 555, 559 (1966); *Height v. State*, 225 Md. 251, 257, 170 A. 2d 212, 214 (1961); *State v. Petrushansky*, 183 Md. 67, 71, 36 A. 2d 533, 535 (1944). This view is strengthened by the fact that both statutes were enacted on the same date. *See Commissioners of Prince George's County v. Commissioners of Laurel*, 51 Md. 457, 462 (1879). *See also United States v. One Bally Bounty In-Line Pinball Machine*, 261 F. Supp. 187, 191 (D. Md. 1966).

Although there are certain differences in the statutory language used, in the time period specified for compliance and minimal variances in the procedures prescribed, the provisions of § 616S are basically similar to the provisions of §§ 616D-616Q, affecting interstate detainers.[11]

Although there is no definition within § 616S of the term "appropriate court," it is defined among the supplemental

_____

dismissal of the charge which is the subject matter of the detainer where the warden fails to inform the prisoner within one year after the filing of the detainer. *See* State v. Norris, 210 Kan. 457, 502 P. 2d 817 (1972); State v. Ellis, 208 Kan. 59, 490 P. 2d 364 (1971). *See also* King v. State, 5 Md. App. 652, 661, 249 A. 2d 468, 474 n. 5 (1969).

11. Under the intrastate provisions a period of 120 days is fixed for trial; the prisoner must give written notice of his request for trial accompanied by a statement of the warden sent to the prosecutor and the appropriate court by certified mail within 30 days of notification of the charge (§ 616S (a)); the warden is directed to inform the prisoner of the source and contents of the detainer and of the prisoner's right to request a disposition within 15 days after he acquires knowledge (§ 616S (b)). Unless the prisoner is tried within 120 days the trial court loses jurisdiction and the indictment is rendered ineffective and must be dismissed with prejudice. (§ 616S (c)).

Under the interstate provisions a period of 180 days is fixed for trial after receipt of written notice from the prisoner (§ 616D (a)); the written request for disposition shall be given or sent to the warden who shall "promptly forward it" together with his certificate by registered or certified mail — with return receipt requested — to the prosecutor and appropriate court. (Unlike § 616S (b), no time period is provided under § 616D (c) within which the warden must inform the prisoner of the detainer.) Although no provision is made for the loss of "jurisdiction" it is provided that the charge upon which the detainer is based shall be dismissed with prejudice unless the prisoner is tried within 180 days — or within 120 days after delivery to the jurisdiction where the charge is pending (§ 616D (a), § 616E (c) and § 616F (c)).

provisions by § 616K. Neither any subsection in § 616S, nor, indeed, any provision in the model Interstate Agreement on Detainers Act, provides as does § 616Q that the written notice and request from the prisoner shall not be deemed to have been caused to be delivered, nor such notification be deemed to have been given until such notice or notification is *actually received* by the proper State's Attorney, etc., and "appropriate court." *See Davidson v. State, supra,* holding that there was no evidence that either the prosecutor, his secretary, nor the Circuit Court actually received any notice or request from the appellant or the Delaware authorities under § 616D (a).

Nor do we believe that the failure in § 616S to provide that the statute shall be "liberally construed so as to effectuate its purpose," as is provided in § 616J, is here material since both statutes at the time of enactment were common in derivation and purpose, were remedial in nature, designed to correct existing law, to redress existing grievances and to introduce regulations conducive to the public good; as such they are to be liberally construed in order to advance the remedy and obviate the mischief. *See Fisher v. Bethesda Discount Corp.,* 221 Md. 271, 157 A. 2d 265 (1960); *Smith v. Higinbothom,* 187 Md. 115, 48 A. 2d 754 (1946); *Ordway v. Central National Bank of Baltimore,* 47 Md. 217 (1877).

Each statutory scheme creates a sort of "statute of limitations" to be applied to detainers, whether they be interstate or intrastate, to the end that valid charges based thereon will be promptly ripened into trials and those detainers having no justiciable merit will be dismissed. Relating as they both do to the same general subject matter and directed at attaining the same basic results, the provisions pertaining to both interstate and intrastate detainers are in *pari materia* and should be construed together so that they will harmonize with each other and be consistent with their general object and scope. *See Board of Fire Commissioners v. Potter,* 268 Md. 285, 300 A. 2d 680 (1973); *Valle v. Pressman,* 229 Md. 591, 185 A. 2d 368 (1962); *May v. Warnick,* 227 Md. 77, 175 A. 2d 413 (1961); *Baltimore Transit Co. v. Mezzanotti,* 227 Md. 8, 174 A. 2d 768 (1961);

*Baltimore Transit Employees' Credit Union v. Thorne,* 214 Md. 200, 134 A. 2d 84 (1957).

We fully agree with the views expressed by the Court of Special Appeals that the two enactments are "identical as to purpose and rationale" and that the liberal construction prescribed by § 616J should be applied to § 616S in order "to encourage expeditious and orderly disposition of outstanding charges against a prisoner when incarcerated under a term of imprisonment." We do not suggest, however, that any such liberal construction to effectuate the purposes of the statute should absolve proof by competent evidence of those conditions precedent necessary for bringing the provisions of the statute into play. We thus see no incompatibility between the holdings in *King v. State, supra,* and the results reached in this respect by the Court of Special Appeals.

The applicability of each of the statutes is predicated upon knowledge by the prisoner of the nature and content of the filed detainer and the delivery of his written request — with accompanying statements from the warden — to the State's Attorney and the appropriate court in the jurisdiction where the charge is pending, that a final disposition be made of that charge. Nowhere in either of the statutes do we find as a procedural requirement that any such notice be sent to the clerk of the court.[12]

The purpose of the notice requirements is to bring to the attention of the operative state officials the request of the prisoner that such authorities take the necessary steps, within the time provided, to set in motion the machinery necessary to bring the pending case to trial. The only logical purpose to be served by directing that the notice be delivered by certified mail is to provide corroboration for bald assertions of having given such notice and a means of tracing and establishing the date of receipt should a dispute concerning the delivery of notice arise.

---

12. Section 616D (a), (b), (d), § 616E (b), § 616F (c) and § 616S (a) all provide that the notice be sent to the "appropriate court," defined (§ 616K) as "any court in this State having criminal jurisdiction which is part of the circuit court of a county, the Supreme Bench of Baltimore City, the District Court . . . ." (where the indictment, information or complaint is pending).

We have held that while failure to comply with the statutory requirements of notice may sometimes be fatal (jurisdictionally), the requirement of notification purposed to inform may be satisfied by proof of actual notice; this is especially true when the knowledge has been acted upon without reliance upon the defects in the notice. *See McLay v. Maryland Assemblies, Inc.*, 269 Md. 465, 476-77, 306 A. 2d 524, 531 (1973); *Clark v. Wolman*, 243 Md. 597, 221 A. 2d 687 (1966). Similarly, where there has been compliance with the substance of the requirements of statutes or rules by one party and the other party has not been prejudiced, we have held that technical irregularities will not be permitted to deprive persons of an opportunity to assert their legal rights. *See McLay v. Maryland Assemblies, Inc.*, *supra; Town of Somerset v. Montgomery County Board of Appeals*, 245 Md. 52, 61, 225 A. 2d 294, 299-300 (1966); *Board of County Commissioners v. Kines*, 239 Md. 119, 125, 210 A. 2d 367, 370-71 (1965).

Indeed, even when a statute requires that a notice be given by registered mail it has been held that notice actually received, though by regular mail, is valid. *See* 58 Am.Jur.2d, *Notice* § 27 (1971); *Crummer v. Whitehead*, 230 Cal.App.2d 264, 40 Cal. Rptr. 826 (1964); *Volandri v. Taylor*, 124 Cal. App. 356, 12 P. 2d 462 (1932); *Steele v. Trustees of Pittsburg Schools*, 121 Cal. App. 419, 9 P. 2d 217 (1932); *Drake v. Comptroller of City of New York*, 278 App. Div. 317, 104 N.Y.S.2d 774 (1st Dept. 1951). *See also Chirico v. Kings County Savings Bank*, 168 Misc. 207, 4 N.Y.S.2d 723 (Sup. Ct. Kings Co. 1938), holding that personal service of a notice of discharge sufficiently complied with the statute requiring notice by registered mail since the intent of the statute was to insure actual notice.

When counsel for the petitioner argues that the right of the respondent to have the provisions of § 616S applied to the murder indictment was defeated because the copy for the "appropriate court" was not delivered by certified mail, we think he exalts form over substance. As Justice Cardozo aptly stated in *Wood v. Lucy, Lady Duff-Gordon*, 222 N. Y. 88, 91, 118 N. E. 214, 214 (1917), "The law has outgrown its

primitive stage of formalism when the precise word was the sovereign talisman, and every slip was fatal. It takes a broader view to-day."

Both the State's Attorney of Baltimore City and the "appropriate court" — the Criminal Assignment Office of the Supreme Bench of Baltimore City, the agency created by it to regulate the assignment of criminal cases — had actual notice of the respondent's request for disposition of the detainer, albeit that the notice received by the Criminal Assignment Office was by transmittal to it of the notice the state's attorney received by certified mail. Each treated the notice as an invocation of the provisions of § 616S. Indeed, the receipt by the respective agencies satisfied the provisions of § 616Q. The form by which the notice was respectively received does not alter the fact that each agency had actual notice. There is no showing of any prejudice to the Criminal Assignment Office resulting from the manner by which it received notice. The technical nonconformity on the part of personnel at the House of Correction in failing to cause delivery to the "appropriate court" by certified mail cannot be here permitted to cause a forfeiture of the legal rights of the respondent under the statute.

Upon receipt of these notices it was incumbent upon the state's attorney to initiate action to see to it that the untried murder indictment was brought to trial within 120 days from the date of the delivery of the respondent's request to the state's attorney (June 12, 1972) and the "appropriate court" (June 19, 1972). His failure to so bring the case to trial was in no way caused by the fact that the assignment office had not received its notice by certified mail. In the absence of any "necessary or reasonable continuance" — which the state's attorney failed to request [13] — the statute became self-executing; when the 120 day period expired the Criminal Court of Baltimore was ousted of jurisdiction, the untried indictment had no further force and effect and an order was mandated dismissing the indictment with prejudice. *See*

---

[13]. It appears that the failure to assign counsel as requested by the respondent may have constituted "good cause" — within the interval for granting a "necessary or reasonable continuance."

*Hoss v. State, supra.* To hold otherwise would render the statute ineffective and defeat its plain object. *See People v. Masselli,* 17 App.Div.2d 367, 234 N.Y.S.2d 929 (1962), *aff'd* 13 N.Y.2d 1, 191 N.E.2d 457 (1963). *See also State v. Lippolis,* 107 N.J.Super. 137 (App. Div.) 257 A. 2d 705 (1969), *rev'd on other grounds,* 55 N. J. 354, 262 A. 2d 203 (1970), cited with approval in both *Hoss v. State, supra,* and in this case by the Court of Special Appeals.

In view of the conclusion reached concerning actual notice received we need not syllogize our holding upon those cases from other jurisdictions urged upon us by counsel for the respondent which hold that the negligence or noncompliance by prosecutors and custodial personnel in failing to give notice of untried outstanding charges or in failing or refusing to transmit the prisoner's request should be "visited upon" the prosecution and not held as a bar to defeat the rights of the prisoner. *See Pittman v. State,* Del., 301 A. 2d 509 (1973) (where Maryland prison authorities refused to forward proper forms to Delaware); *People v. Parker,* 21 Mich. App. 399, 175 N.W.2d 879 (1970) (where the prosecutor failed to notify the prison officials of the untried outstanding charge); *People v. Haynes,* 5 Mich. App. 641, 147 N.W.2d 714 (1967) (where the warden failed to give the inmate notice of the detainer); *People v. Masselli, supra* (where the prosecutor failed to notify the . correction officials and they refused to transmit the prisoner's request). *Compare King v. State, supra,* 5 Md. App. at 662-63, 249 A. 2d at 475.

As counsel for the respondent whimsically observed in their brief, "[a] summary of the actions of the State officials involved in the processing of the instant request under § 616S reads like a scenario for the 'Keystone Kops Take Desk Jobs.'" Although the state's attorney received the respondent's request on June 12, 1972, it took a full week for manual transmittal of the notice to the Criminal Assignment Office. Upon return of the notice from the assignment office the personnel of the state's attorney made no inquiry concerning the appearance of counsel for the prisoner, sent no certificate of readiness for trial to the assignment office, did not move in "open court" for a

continuance and did not undertake to conduct a pretrial conference until more than six months later, on December 19th. The Criminal Assignment Office equally went about its duties by logging receipt of the respondent's request as a [motion for] "speedy trial," and by promptly returning it to await advice from the state's attorney, without scheduling a tentative trial date. Although the respondent had requested the assignment of counsel and the assignment office at that time carried on the responsibility of notifying the District Public Defender of such requests, its personnel did not get around to performing that ministerial function until "early November." The Clerk of the Criminal Court obviously received a copy of the documents from the prisoner shortly after the posting of the certified letter, but the documents were there undated, unrecorded, and for inexplicable reasons, placed in the "S" file. The collective attitude of the personnel of these offices commissioned to see to the prompt and effective administration of the criminal laws seems to suggest that none of them was remotely aware of the importance of the role assigned to each to carry out the requirements of § 616S — although it had been in effect for over seven years — or much less had ever been instructed in procedures for processing documents filed under the statute.

We lament the fact that by our decision we are now compelled to discharge one who was convicted by a jury of murder in the first degree, but the results are not of our doing. As was cogently observed by Mr. Justice Clark, who delivered the majority opinion of the United States Supreme Court in *Mapp v. Ohio*, 367 U. S. 643, 659 (1961): "The criminal goes free, if he must, but it is the law that sets him free. Nothing can destroy a government more quickly than its failure to observe its own laws, or worse, its disregard of the charter of its own existence. . . . 'If the government becomes a lawbreaker, it breeds contempt for law; it invites every man to become a law unto himself; it invites anarchy.' " Under the facts here, governmental personnel by their laxity and apathy ignored the mandates of the law.

*The judgment of the Court of Special Appeals is affirmed; costs to be paid by the Mayor and City Council of Baltimore.*