*Caitlin Nichole Stanton v. State of Maryland*, No. 1541, September Term 2022. Opinion by Wells, C. J.

**CRIMINAL PROCEDURE – INTERSTATE AGREEMENT ON DETAINERS (IAD) – REQUEST BY INMATE FOR FINAL DISPOSITION**

In general, the notice provisions of the Interstate Agreement on Detainers (IAD) are mandatory. Further, the burden is on the inmate to request the disposition of pending charges in the appropriate manner. However, where an inmate has substantially complied with these statutory requirements, proof of actual notice may prove sufficient for that inmate to receive the benefit of these statutes. Still, these provisions may not be totally ignored. Here, because the inmate could not demonstrate that she filed *any* written notice or request for final disposition, she did not invoke the statutory benefit of being brought to trial within 180 days. Md. Code Ann., Correctional Services §§ 8-405, 8-416.

**CRIMINAL PROCEDURE – INTERSTATE AGREEMENT ON DETAINERS (IAD) – REQUEST BY INMATE FOR FINAL DISPOSITION**

The issuance of a bench warrant does not start the 180-day IAD clock in which the State must bring a defendant to trial. Rather, the issuance of a warrant, and the subsequent lodging of a detainer, creates the circumstances under which the IAD applies. To invoke the 180-day IAD clock, the inmate must file a request for IAD relief with the warden or other official of the institution where the inmate is currently imprisoned, who then must forward the request to the appropriate authorities in the receiving state. Md. Code Ann., Correctional Services § 8-405.

REPORTED

IN THE APPELLATE COURT

OF MARYLAND*

No. 1541

September Term, 2022

———————————————————————

CAITLIN NICHOLE STANTON

v.

STATE OF MARYLAND

———————————————————————

Wells, C.J.,
Kehoe,
Zarnoch, Robert A.,
    (Senior Judge, Specially Assigned),

JJ.

———————————————————————

Opinion by Wells, C.J.

———————————————————————

Filed: July 25, 2023

Pursuant to the Maryland Uniform Electronic Legal Materials
Act (§§ 10-1601 et seq. of the State Government Article) this
document is authentic.



Gregory Hilton, Clerk

*At the November 8, 2022 general election, the voters of Maryland ratified a constitutional amendment changing the name of the Court of Special Appeals of Maryland to the Appellate Court of Maryland. The name change took effect on December 14, 2022.

In the Circuit Court for Garrett County, Maryland, the State charged Appellant, Caitlin Nichole Stanton, with possession of methamphetamine with the intent to distribute, along with several other related offenses. While Stanton was released on bond for this matter, she was arrested and sentenced to a period of incarceration in West Virginia on separate charges. When Stanton failed to appear for a motions hearing before the circuit court in Maryland, her attorney requested the court issue a bench warrant to initiate the Interstate Agreement on Detainers ("IAD")[1] process. In July 2021, the circuit court issued a warrant for Stanton and continued her case until she was available from her incarceration in West Virginia. In May 2022, the circuit court granted Stanton's request to quash the warrant. About a month later, Stanton moved to dismiss with prejudice the charges against her, arguing that the State and circuit court had actual notice of her request to have her case heard pursuant to the IAD. The court denied her motion to dismiss, and Stanton filed this timely appeal. On appeal, she submits the following question for our review: "Did the circuit court err in denying Appellant's motion to dismiss for the State's failure to comply with the [IAD]?"

For the following reasons, we conclude the circuit court did not err in denying Stanton's motion to dismiss, and, therefore, we shall affirm the court's judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

On August 19, 2020, Stanton was charged in the District Court of Garrett County,

---

[1] The specifics of the IAD and Maryland's adoption and codification of the Act will be discussed in more detail in our analysis below.

Maryland by complaint with possession of a controlled dangerous substance (methamphetamine), possession with intent to distribute methamphetamine, and possession of drug paraphernalia. That same day, Appellant was released on bond on the charges. On October 15, 2020, the State's Attorney for Garrett County charged Stanton by criminal information in the Circuit Court for Garrett County with the same offenses as well as driving while impaired by a controlled dangerous substance, driving without a license, and related payable traffic offenses.

On October 27, 2020, Stanton's defense attorney entered his appearance and requested a speedy trial on Stanton's behalf. On November 25, 2020, Stanton entered a not guilty plea and requested a jury trial, which was scheduled for July 8, 2021

However, while Stanton was released on bond and awaiting trial in Maryland, she was arrested and sentenced to a period of incarceration in West Virginia on charges unrelated to this case. On May 6, 2021, the Maryland State's Attorney e-mailed Stanton's defense counsel regarding how to resolve her case in Maryland via the IAD:

> The records lady [employee in West Virginia] had had a conversation with [Stanton] about coming to [Maryland] to resolve her case via Interstate Act on Detainers. However, there is no warrant outstanding in our case, which is what triggers IAD. Would you like to talk to her about filing to revoke her bond so we can get that warrant and the process can begin? Otherwise, there should be a warrant on July 8, 2021 when she [fails to appear].

Stanton's defense counsel replied that there was "no way to revoke bail" because the individual who paid Stanton's bond was incarcerated, concluding "I guess we will let the Judge know, get a [failure to appear bench warrant], and get her in via IAD afterwards."

On July 6, 2021, the State's Attorney and defense counsel appeared before the

circuit court for a pre-trial motions hearing. At the motions hearing, the State's Attorney informed the court that "Ms. Stanton is currently serving a sentence in the West Virginia Division of Corrections and, obviously, not available to us at this time." When the court asked "has there been a transportation order[,]" the State's Attorney responded, "No. The only -- I mean the only way we can get her is if we had a warrant and we invoke the Interstate Act on Detainers." Defense counsel then requested the court issue a bench warrant for Stanton to initiate the IAD process, stating, "[I]n order for the Interstate, for the IAD to work, [] we're asking Your Honor to consider actually doing that now for the fact that she isn't present for this hearing, actually issue a warrant to start the process." Defense counsel also informed the court of Stanton's failed attempts to initiate the IAD process in West Virginia. The State's Attorney did not object to this request, and the court issued a bench warrant for Stanton.

On July 8, 2021—the scheduled trial date—the circuit court granted a continuance "until she's available from her incarceration in another state."

On May 4, 2022, Stanton requested that the circuit court quash the July 6, 2021 bench warrant so that she could be transferred to a sober living program as part of her sentence in West Virginia. Two days later, the court granted Stanton's request.

On June 3, 2022, Stanton filed a motion to dismiss with prejudice the charges against her in Garrett County. In her motion to dismiss, Stanton alleged that, prior to her bench warrant in July 2021, she made multiple requests with correctional officers in West Virginia for paperwork to be transferred to Maryland via IAD for her trial. Stanton argued that these requests, combined with the e-mail exchange between her attorney and the

3

State's Attorney, as well as the subsequent hearings in July 2021, put the State and the circuit court on "actual notice of [her] request to have her case heard pursuant to the IAD." And, according to Stanton, because the State violated the IAD, "this matter should be dismissed with prejudice."[2]

In response, the State argued that Stanton "did not effectively invoke the provisions of the IAD." On June 14, 2022, the circuit court denied Stanton's motion to dismiss without a hearing.

Two days later, Stanton entered a not guilty plea and proceeded by way of an agreed statement of facts as to conspiracy to possess methamphetamine with the intent to distribute. The circuit court found Stanton guilty of the amended count, and sentenced her to five years' incarceration, with all but 18 months suspended, and three years of supervised probation upon release. Stanton timely appealed the denial of her motion to dismiss.

## DISCUSSION

### I. The Interstate Agreement on Detainers

### A. Parties' Contentions

Stanton contends that the circuit court erred by denying her motion to dismiss the charges against her despite the State's failure to comply with the IAD. While Stanton concedes that "[w]ritten notice to the receiving state of the inmate's intent to invoke the IAD is required[,]" she points out that this notice requirement "may be satisfied by proof of actual notice." *See State v. Barnes*, 273 Md. 195, 210 (1974). Stanton argues that her e-

---

[2] Stanton also argued that her right to a speedy trial had been violated. However, because Stanton makes no such claim on appeal, we decline to address this issue.

mail exchange with the State's Attorney and the motions hearing before the circuit court placed both on actual notice that she intended to proceed under the IAD and that the State's Attorney had 180 days to bring her to trial. Because the State failed to do so, according to Stanton, it violated the IAD and therefore, the court should have granted her motion to dismiss.

The State counters that the circuit court properly denied Stanton's motion to dismiss because *she* failed to comply with the strict and mandatory requirements of the IAD. The State posits that, to initiate the State's obligations under the IAD, the defendant must first submit a written request that complies with a series of requirements and is actually received by the appropriate court and state's attorney's office. "And it is the defendant's burden to demonstrate compliance with the formal procedural requirements of the IAD." *See Thurman v. State*, 89 Md. App. 125, 131 (1991). The State contends that Stanton's communication with the State's Attorney and circuit court "[a]t most, . . . alerted the State and trial court that Stanton intended, at some point in the future, to submit a request" that complied with the IAD requirements. Aside from that, she "presents no evidence that she ever filed any such written request, or that she complied with the IAD's specific, mandatory requirements[.]" Finally, the State argues that *Barnes* has no bearing on this case because "[u]nlike Barnes, Stanton wholly failed to submit any request, compliant with the IAD or not, for final disposition of her case." Without such a request, the State contends, there can be no actual notice.

**B. Standard of Review**

The interpretation of a statute, in this instance the IAD, is a question of law which we review de novo. *Dejarnette v. State*, 478 Md. 148, 162 (2022). "Generally, the standard of review of the grant or denial of a motion to dismiss is whether the trial court was legally correct." *Blackstone v. Sharma*, 461 Md. 87, 110 (2018) (internal quotation marks and citations omitted).

**C. Analysis**

> The IAD is a congressionally-sanctioned compact among the states designed to facilitate the prompt disposition of a detainer lodged by one state against a person incarcerated in another state. In particular, the IAD allows for the temporary transfer of the prisoner from the state of incarceration to the state in which charges are pending, upon the request of either the prisoner or the prosecuting jurisdiction.

*Aleman v. State*, 469 Md. 397, 402 (2020).[3] Maryland became a party to the compact in 1965. Chapter 627, § 1, Laws of Maryland 1965. The IAD is now codified as Maryland Code, Correctional Services Article ("CS"), § 8-401 *et seq*.

Two provisions of this code are pertinent in this case. Section 8-405(a) provides:

> Whenever a person has entered upon a term of imprisonment in a penal or correctional institution of a party state, and whenever during the continuance of the term of imprisonment there is pending in any other party state any untried indictment, information, or complaint on the basis of which a detainer has been lodged against the prisoner, **the prisoner shall be brought to trial within 180 days after the prisoner shall have caused to be delivered to the prosecuting officer and the appropriate court of the prosecuting officer's jurisdiction written notice of the place of the prisoner's imprisonment and the prisoner's request for a final disposition to be made of the indictment, information, or complaint**;

---

[3] We forego an in-depth discussion of the history of the IAD, as our Supreme Court recently provided such a background in *Aleman v. State*, 469 Md. 397, 403–09, *cert. denied*, 208 L. Ed. 2d 278, 141 S. Ct. 671 (2020).

provided that for good cause shown in open court, the prisoner or the prisoner's counsel being present, the court having jurisdiction of the matter may grant any necessary or reasonable continuance. **The request of the prisoner shall be accompanied by a certificate of the appropriate official having custody of the prisoner, stating the term of commitment under which the prisoner is being held, the time already served, the time remaining to be served on the sentence, the amount of good time earned, the time of parole eligibility of the prisoner, and any decisions of the state parole agency relating to the prisoner.**

(Emphasis added). And § 8-416 specifies, in relevant part:

As to any request by an individual confined in another party state for trial in this State, **written notice may not be deemed to have been delivered** to the prosecuting officers and the appropriate court of this State in accordance with § 8-405(a) . . . of this subtitle . . . **until the notice or notification is actually received by the appropriate court and the appropriate State's Attorney of this State**, the State's Attorney's deputy or assistant, or any other person empowered to receive mail on behalf of the State's Attorney.

(Emphasis added).

On the one hand, we have held that the notice provisions of § 8-405(a) are "mandatory and not directory." *Thurman v. State*, 89 Md. App. 125, 131 (1991) (citing *Hines v. State*, 58 Md. App. 637, 649 (1984)). In *Thurman*, Thurman mailed his IAD request to the appropriate court, but not the prosecuting officer. 89 Md. App. at 127-28. Additionally, there was no evidence that his request was actually received by the prosecuting officer. *Id.* Analyzing the notice provisions,[4] we affirmed that these requirements "are mandatory and not directory, and that the burden is on the prisoner to request the benefits of the Interstate Agreement on Detainers in the appropriate manner."

---

[4] At the time this case was decided, the IAD was codified in the Maryland Code as Article 27, § 616A *et seq*. In 1999, it was recodified as part of the then-new Correctional Services Article. Chapter 54, Laws of Maryland 1999. For purposes of our analysis, however, this recodification did not alter the substance of the notice provisions.

7

*Id.* at 131. However, we also agreed with the U.S. District Court for the District of Maryland's assessment in a similar case that:

> Although strict compliance with each particular of the notice requirement may not be mandatory, *see, e.g., State v. Barnes*, 273 Md. 195, 328 A.2d 737 (1974), more is required than merely addressing a request to one of the persons required by statute to be notified…. The notice provision of the IAD was obviously enacted to ensure adequate notification to the state, and its particulars may not be ignored totally…. A prisoner seeking to benefit from the statute must first meet the burden of compliance with the Act. Petitioner, having failed to satisfy the notice prerequisites of the Act … may not now complain that he was denied its benefits.

*Id.* at 132 (quoting *Williams v. Maryland*, 445 F. Supp. 1216 (D. Md. 1978)) (citations omitted). Because § 8-405(a) "requires that the prisoner notify both the State's Attorney's Office *and* the appropriate court[,]" we ruled that "[m]erely delivering one copy of the IAD request to one of the persons required by the statute to be notified is not sufficient[,]" and therefore affirmed the trial court's denial of Thurman's motion to dismiss. *Id.* at 132.

On the other hand, we have also held that "it is actual notice and not exact compliance with the statute that matters." *State v. Coale*, 250 Md. App. 1, 39-40 (2021) (referencing *Barnes v. State*, 273 Md. 195 (1974)). In *Barnes*, while serving a sentence in a Maryland prison for an unrelated crime, Barnes was indicted in Baltimore City for first-degree murder. 273 Md. at 196. Shortly thereafter, a warrant was issued, and a detainer was lodged against him. *Id.* Upon learning of the detainer, Barnes filed a request for a final disposition of the pending charge within 120 days pursuant to the Intrastate Detainer Act

8

("IDA").[5] *Id.* at 196-97. The IDA requires the inmate to give written notice of his or her request for trial to the appropriate prosecuting officer and court by certified mail. *Id.* at 207 n.11. While it was undisputed that the appropriate state's attorney received Barnes' notice by certified mail, there was no evidence that the trial court received such notice *by certified mail.*[6] *Id.* at 196-97. However, it was also undisputed that the state's attorney's office forwarded Barnes' request to the trial court, and neither brought the case to trial within 120 days. *Id.* at 197-98.

First, the Supreme Court of Maryland[7] recognized that the IAD and IDA, enacted by the General Assembly on the same date, "are identical as to purpose and rationale[.]" *Id.* at 206-09. And, while a "liberal construction" should be applied to these statutes "to encourage expeditious and orderly disposition of outstanding charges[,]" the Court cautioned that "[w]e do not suggest, however, that any such liberal construction to

---

[5] The Intrastate Detainer Act ("IDA"), now codified as CS §§ 8-501—03, allows for the temporary transfer of an inmate from one of Maryland's correctional facilities to the county in Maryland in which charges are pending. Such an inmate who has delivered to the proper state's attorney and court a written request for a final disposition of the charge, must be brought to trial within 120 days of that receipt. *See* CS §§ 8-501—03.

[6] It appears that although officers at the correctional facility sent Barnes' notice to the state's attorney by certified mail, they mailed copies to the clerk of the criminal court by first-class mail. *Id.* at 197.

[7] At the November 8, 2022 general election, the voters of Maryland ratified a constitutional amendment changing the name of the Court of Appeals of Maryland to the Supreme Court of Maryland. The name change took effect on December 14, 2022. *See also* Md. Rule 1-101.1(a) ("From and after December 14, 2022, any reference in these Rules or, in any proceedings before any court of the Maryland Judiciary, any reference in any statute, ordinance, or regulation applicable in Maryland to the Court of Appeals of Maryland shall be deemed to refer to the Supreme Court of Maryland . . . .").

9

effectuate the purposes of the statute should absolve proof by competent evidence of those conditions precedent necessary for bringing the provisions of the statute into play." *Id.* at 209.

> **The applicability of each of the statutes is predicated upon** knowledge by the prisoner of the nature and content of the filed detainer and **the delivery of his written request-with accompanying statements from the warden-to the State's Attorney and the appropriate court in the jurisdiction where the charge is pending, that a final disposition be made of that charge**.

*Id.* (emphasis added). Acknowledging that the "failure to comply with the statutory requirements of notice may sometimes be fatal (jurisdictionally)," the Court also recognized that the notice requirement "may be satisfied by proof of actual notice[,]" especially "when the knowledge has been acted upon without reliance upon the defects in the notice." *Id.* at 210.

Reviewing the circumstances in *Barnes*, the Court held that the trial court had "actual notice" of Barnes' request even though the compliant notice was transmitted to the court via the state's attorney's office. *Id.* at 211. "The technical noncomformity on the part of personnel at the House of Correction in failing to cause delivery to the 'appropriate court' by certified mail cannot be here permitted to cause a forfeiture of the legal rights of the respondent under the statute." *Id.* For the Court, the fact that both the state's attorney's office and trial court "treated the notice as an invocation" of the inmate's right to a final disposition of the pending charges, further supported a more liberal construction of the notice requirements. *See id.* Under these circumstances, because the State failed to bring

10

the case to trial within 120 days of notice of Barnes' request, the charges were dismissed. *Id.* at 211-12.

Read together, these cases indicate that, in general, the IAD (and IDA) notice provisions are mandatory. And, that the burden is on the inmate to request the disposition of pending charges in the appropriate manner. However, where an inmate has substantially complied with these statutory requirements, proof of actual notice may prove sufficient for that inmate to receive the benefit of these statutes. Still, these provisions may not be totally ignored.

In the case at bar, Stanton has not demonstrated that she complied with the IAD. As discussed above, under § 8-405(a), for such an inmate to exercise the right to be brought to trial on pending charges within 180 days, the inmate must file a written notice and request for final disposition. That request must be accompanied by:

> a certificate of the appropriate official having custody of the prisoner, stating the term of commitment under which the prisoner is being held, the time already served, the time remaining to be served on the sentence, the amount of good time earned, the time of parole eligibility of the prisoner, and any decisions of the state parole agency relating to the prisoner.

§ 8-405(a). However, Stanton presents no evidence that she filed *any* written notice or request, let alone such notice and request in compliance with the IAD.

Instead, Stanton relies on *Barnes*, and argues that the e-mail exchange with the State's Attorney coupled with the motions hearing in which the circuit court issued a bench warrant for Stanton, put the court and State on actual notice of Stanton's request to have her case heard in 180 days pursuant to the IAD. We disagree for several reasons. First, as a preliminary matter, the issuance of a bench warrant does not start the 180-day IAD clock

11

under which the State must bring a defendant to trial. Rather, as the State points out, the issuance of a warrant, and the subsequent lodging of a detainer, creates the circumstances under which the IAD applies. As our Supreme Court explained in *State v. Pair*:

> **The interstate transfer process begins when the "receiving" state lodges a detainer with the warden "or other official" of the institution where the prisoner in question is currently imprisoned, in what is referred to as the custodial or "sending" state**. The warden or other authority in the sending state is then obligated to inform the inmate of the detainer's source and contents, and of the inmate's right, under the IAD, to request final disposition of the charges on which the detainer is based.
>
> **To exercise the right of speedy disposition, the inmate must file a request for IAD relief with the warden**, who must forward the request to appropriate authorities in the receiving state.

416 Md. 157, 162 (2010) (internal citations omitted) (emphasis added). As such, the court's bench warrant for Stanton did not trigger the 180-day clock; Stanton still needed to file written notice and request, which she did not.

Second, Stanton's e-mail communication with the State's Attorney and dialogue with the circuit court at the motions hearing did not put either on actual notice of a request to have her case heard in 180 days pursuant to the IAD. In the e-mail exchange, the State's Attorney explained to defense counsel that in order to "begin" the IAD process, Maryland would need to issue a warrant for Stanton. At the motions hearing, the State's Attorney and defense counsel reiterated to the circuit court that the issuance of a bench warrant would be needed to start the IAD process. As explained above, the IAD process *begins* when the "receiving" state lodges a detainer, often facilitated by issuing a warrant for the inmate. *See Pair*, 416 Md. at 162. But, issuing a warrant and lodging a detainer do *not* trigger an inmate's right of speedy disposition. Rather, that right is triggered by the inmate filing a

12

written notice and request compliant with the IAD provisions. We agree with the State that these communications, at best "alerted the State and the trial court that Stanton intended, at some point in the future, to submit a request" that complied with the IAD requirements. However, Stanton presents no such evidence.

Finally, we find *Barnes* plainly distinguishable from the case before us. In *Barnes*, the Court held that the trial court had "actual notice" of Barnes' request where the inmate substantially complied with the statutory requirements. 273 Md. at 211. By contrast, here, Stanton failed to file *any* request, clearly not complying with the IAD. Under these circumstances, we cannot conclude that the State's Attorney or the circuit court had actual notice of Stanton's not-yet submitted request.

For these reasons, we determine that the circuit court did not err in denying Appellant's motion to dismiss and affirm.

**JUDGMENT OF THE CIRCUIT COURT FOR GARRETT COUNTY AFFIRMED. COSTS TO BE PAID BY APPELLANT.**

13